IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY 1997 SESSION



FILED

**December 11, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 02-C-01-9609-CC-00307 |
| | ) | |
| | ) | Hardin County |
| v. | ) | |
| | ) | C. Creed McGinley, Judge |
| | ) | |
| | ) | (Possession of Cocaine and |
| | ) | Marijuana with Intent to Sell) |
| CHARLES DAVID VANDERFORD, | ) | |
| | ) | |
| APPELLANT. | ) | |

FOR THE APPELLANT:

J. Daniel Freemon
Attorney at Law
327 West Gaines Street
Lawrenceburg, TN 38464

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Eugene J. Honea
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

G. Robert Radford
District Attorney General
P.O. Box 686
Huntingdon, TN 38344-0686

John W. Overton, Jr.
Assistant District Attorney General
P.O. Box 484
Savannah, TN 38372

OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Charles David Vanderford (defendant), was convicted of possessing over five grams of cocaine, a Class B felony, and possessing more than .5 ounces of marijuana, a Class E felony, by a jury of his peers.  The trial court found the defendant was a standard offender and imposed the following Range I sentences: a fine of $25,000 and confinement for nine (9) years in the Department of Correction for possessing cocaine and a fine of $5,000 and confinement for eighteen (18) months in the Department of Correction for possessing marijuana. The sentences are to be served concurrently.  The effective sentence imposed consisted of fines totaling $30,000 and confinement for nine (9) years in the Department of Correction.

Five issues are presented for review, namely:

> I.  Whether the trial court erred by failing to compel the state to furnish certain discovery and exculpatory materials to the appellant, specifically a tape recording of alleged conversations between the appellant and a paid informant or in the alternative, a transcript of the tape?
>
> II.  Whether the paid informant used by the Hardin County Sheriff's Department was an agent of the sheriff's department therefore, subject to the same scrutiny as a government official under the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution?
>
> III.  Whether the trial court erred by denying appellant's motion to suppress the evidence obtained as the result of an illegal and improper search warrant executed on appellant's residence?
>
> IV.  Whether the trial court erred in failing to order the district attorney general to grant appellant pre-trial diversion when appellant applied for same and the district attorney general did not file an answer setting forth the reason why such should not be granted?
>
> V.  Whether the appropriate sentence in this case would have been sentencing the defendant to out-right community corrections pursuant to T.C.A. 40-36-101 et seq?

The defendant also questions the constitutionality of the description of the residence to be searched under color of the search warrant.   After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this court that the judgment of the trial court should be affirmed.

2

The Hardin County Sheriff's Department received information that the defendant was engaged in the trafficking of illicit narcotics. A deputy sheriff had two confidential informants go to the defendant's residence to purchase cocaine. The confidential informants went to the residence on different dates. The confidential informants wore a device which permitted the deputy sheriff to monitor the conversation between the confidential informant and the defendant. Both confidential informants purchased cocaine at the defendant's residence. The deputy sheriff heard and recorded the conversations.

On March 31, 1995, a search warrant was issued authorizing the search of the defendant's residence. The search warrant was served shortly after it was issued. The deputies seized 12.4 grams of cocaine, 25.1 grams of marijuana, $3,033 in cash, and a piece of paper outlining drug transactions. The paper writing contained the words "owe" and "paid" at the top of the paper, and there were several sums of money listed under these headings. There was testimony that the figure "8," which was found on the paper, referred to an "eightball," a term used to indicate a specific quantity of cocaine. There was also an initial or a first name next to each figure.

I.

The defendant contends the trial court committed error of prejudicial dimensions by refusing to order the State of Tennessee to furnish him with a copy of the audio tape containing the conversations between the confidential informants and the defendant, or, in the alternative, a transcript of the tape. The State of Tennessee contends the trial court properly denied the motion. The state argues it had the right to protect the identity of the confidential informant.

Immediately prior to the hearing on the motion to suppress the evidence seized under color of the search warrant, defense counsel made an oral motion for the disclosure of the taped conversations between the defendant and the confidential informants. The following colloquy occurred during the prehearing proceedings:

MR. FREEMON: One other thing, your Honor, is the tape. I understand there was a tape recorded conversation made when the probable cause was obtained for this [search] warrant. And that is important to the argument of the motion [to suppress] that I know what's on that tape or how --

THE COURT: Is the tape available?

MR. OVERTON: Your Honor, we're going to take the position that since the informant -- the search warrant sets out that the informant is not named in the search warrant for safety reasons. That the divulging of the tape would, in fact, identify that informant.

The tape is not of a transaction that occurred at the time [the] charge was placed or the basis of this charge. It is a transaction that occurs earlier that these officers monitored and then used that transaction as part of the information that they used to obtain the search warrant.

So it's our position that the identity of the informant need not be revealed under the law; nor would anything that would tend to identify him be revealed under the law.

MR. FREEMON: Your Honor, if the tape itself is not discoverable then, you know, perhaps I could be furnished with a transcript of what's on the tape. I'm not interested in identifying the informant.

The sheriff deputy or the officer involved in this case testified that he monitored this conversation. And part of what he says he heard is the basis of the [search] warrant. It's the application that the Court is going to have to determine if it's appropriate probable cause or not.

So certainly, if that conversation is mentioned in the affidavit for the search warrant, we should be apprised of that material. And I think we're entitled to it under the rules of discovery.

The court declared a recess and told defense counsel: "You folks need to talk to the Attorney General and see if you can resolve your discovery problems." When the proceedings commenced following the recess, the following occurred:

MR. FREEMON: I need to, I guess, make a motion to compel discovery of the tape, your Honor. I would make that orally and follow that up with a written motion.

The argument of counsel continued. Counsel for the codefendant stated he felt the tape would reveal exculpatory evidence regarding his client. Counsel for the defendant stated: "Well, we think [the tape] is discoverable, too, your Honor. I'm not sure it would contain exculpatory information." Thereafter, the following colloquy took place:

4

THE COURT: Is this informant not a material witness?

MR. FREEMON: Your Honor, they're not charged with the sale [to the informant]. They are charged with the possession of what was found when the search warrant was executed. This alleged sale was the basis of the search warrant.

It would be our contention that that constituted an invalid search of the residence. When the sheriff sent an agent, a law enforcement agent, into the residence wired so that the sheriff could monitor what took place inside the residence from outside the residence, we contend that constitutes a search and an intrusion without the warrant.

So it's very important to our presentation of the motion to suppress that we know what's on that tape.

The court asked the assistant district attorney general if he desired to reveal the identity of the informants. The assistant district attorney general told the court he was not willing to reveal the identity of the informants. The trial court denied the defendant's motion to compel the discovery of the tape.

This court must first consider whether the state is entitled to refrain from revealing the identity of a confidential informant to the defense.

## A.

As a general rule, the identity of a confidential informant is privileged. Thus, the state is not required to reveal the identity of an informant who has provided information leading to a defendant's arrest and conviction. State v. Taylor, 763 S.W.2d 756, 760 (Tenn. Crim. App. 1988); State v. Ash, 729 S.W.2d 275, 278 (Tenn. Crim. App. 1986), per. app. denied (Tenn. 1987); Carver v. State, 570 S.W.2d 872, 874-75 (Tenn. Crim. App.), cert. denied (Tenn. 1978); Keith v. State, 542 S.W.2d 839, 842 (Tenn. Crim. App.), cert. denied (Tenn. 1976). See State v. Brown, 823 S.W.2d 576, 586 (Tenn. Crim. App. 1991). This privilege is predicated upon "public policy and seeks to encourage citizens to assist in crime detection and prevention by giving information to law enforcement officials without unduly exposing themselves to the danger inherent in such laudable activity and to make possible their continued usefulness in future disclosures that the revelation of their identity would probably hamper and prevent." Roberts v. State, 489 S.W.2d 263, 264 (Tenn. Crim.

App.), cert. denied (Tenn. 1972). The defendant has no constitutional right to the disclosure of a confidential informant. McCray v. Illinois, 386 U.S. 300, 313-14, 87 S.Ct. 1056, 1064, 18 L.Ed.2d 62, 71-72 (1967); Wallis v. State, 220 Tenn. 400, 406, 417 S.W.2d 781, 784 (1967); United States ex rel. Cunningham v. DeRobertis, 719 F.2d 892, 895 (7th Cir. 1983); see also Simmons v. State, 198 Tenn. 587, 596, 281 S.W.2d 487, 491 (1955).

This court has held a defendant is not entitled to the disclosure of a confidential informant's identity when the only purpose is to attack a search warrant. In State v. Ash, supra, the defendant moved for the disclosure of a confidential informant who supplied information which was incorporated into the affidavit given in support of the issuance of the search warrant. Defense counsel stated he wanted to establish the information supplied by the confidential informant was false. The trial court denied the motion. This court affirmed the judgment of the trial court. It was held that a defendant is not entitled to disclosure of a confidential informant's identity when the defendant's sole and exclusive reason for seeking the identity is to attack the validity of a search warrant. Ash, 729 S.W.2d at 278.

In Wells v. State, 509 S.W.2d 520, 521 (Tenn. Crim. App. 1973), aff'd, 517 S.W.2d 755 (Tenn. 1974), the affidavit given in support of the issuance of the search warrant stated the confidential informant had purchased illicit narcotics at the defendant's residence. The search warrant was issued and the officers seized "rather large quantities" of the illicit narcotics under color of the warrant. The defendants were prosecuted and convicted for possession of the illicit narcotics seized at the residence. This court ruled the state was not required to reveal the identity of the confidential informant to the defendant.

In Phipps v. State, 4 Tenn. Crim. App. 511, 520-21, 474 S.W.2d 154, 159, cert. denied (Tenn. 1971), the defendant burglarized a business and stole merchandise owned by the business. A confidential informant told officers that the defendant was the person who burglarized the building and he was in possession of the stolen merchandise. The officers had the confidential informant purchase some of the stolen property while they observed the sale. Thereafter the officers obtained a search warrant and seized some of the stolen merchandise while searching the defendant's residence. This stolen property was the basis for the defendant's prosecution and resulting conviction. This court held that

6

the trial court did not abuse its discretion by denying the defendant's motion to compel the state to divulge the name of the informant.

This court must now consider when a defendant is entitled to discover the identity of a confidential informant.

**B.**

The privilege afforded confidential informants is not absolute. Roviaro v. United States, 353 U.S. 53, 59-61, 77 S.Ct. 623, 627-28, 1 L.Ed.2d 639, 644-45 (1957); Brown, 823 S.W.2d at 586; Washington v. State, 534 S.W.2d 865, 867 (Tenn. Crim. App. 1975), cert. denied (Tenn. 1976); Roberts v. State, 489 S.W.2d 263, 264-65 (Tenn. Crim. App.), cert. denied (Tenn. 1972); see Goines v. State, 572 S.W.2d 644, 647 (Tenn. 1978). Moreover, "the scope of the privilege is limited by its underlying purpose." Roviaro, 353 U.S. at 60, 77 S.Ct. at 627, 1 L.Ed.2d at 644.

There is no fixed rule regarding when the state must divulge the identity of a confidential informant to the defendant. Roviaro, 353 U.S. at 62, 77 S.Ct. at 628, 1 L.Ed.2d at 646; Phipps, 4 Tenn. Crim. App. at 520, 474 S.W.2d at 159. Whether the state should be required to disclose the identity of a confidential informant is a matter which addresses itself to the sound discretion of the trial court. Wallis, 220 Tenn. at 406, 417 S.W.2d at 784; Simmons, 198 Tenn. at 596-97, 281 S.W.2d at 491-92; Brown, 823 S.W.2d at 586-87; State v. Russell, 580 S.W.2d 793, 793 (Tenn. Crim. App. 1978), cert. denied (Tenn. 1979); Phipps, 4 Tenn. Crim. App. at 520-21, 474 S.W.2d at 159. The trial court must decide this question on a case by case basis, taking into consideration the facts peculiar to each case. Roviaro, 353 U.S. at 62, 77 S.Ct. at 628-29, 1 L.Ed.2d at 646. See Carver, 570 S.W.2d at 874-75. However, there are certain factual circumstances which entitle the defendant to discover the identity of a confidential informant.

The state is required to divulge the identity of a confidential informant to the defendant when: (a) disclosure would be relevant and helpful to the defendant in presenting his defense and is essential to a fair trial, Roviaro, 353 U.S. at 60-61, 77 S.Ct. at 628, 1 L.Ed.2d at 645; (b) the informant was a participant in the crime, Roviaro, 353 U.S. at 64-65, 77 S.Ct. at 629, 1 L.Ed.2d at 647; State v. Campbell, 549 S.W.2d 952, 954

7

(Tenn. 1977); Brown, 823 S.W.2d at 587; (c) the informant was a witness to the crime, Washington, 534 S.W.2d at 867; Roberts, 489 S.W.2d at 264; or (d) the informant has knowledge which is favorable to the defendant. Goines, 572 S.W.2d at 647; see Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The defendant, as the movant for disclosure, has the burden of establishing by a preponderance of the evidence that the confidential informant's identity is material to his defense because the informant was a witness to the crime, participated in the crime, or possesses facts favorable or relevant to the defendant. See Ash, 729 S.W.2d at 278; Brady v. State, 584 S.W.2d 245, 251 (Tenn. Crim. App.), cert. denied (Tenn. 1979); Keith, 542 S.W.2d at 842; Dortch v. State, 517 S.W.2d 24, 26 (Tenn. Crim. App. 1974). If the defendant fails to establish the materiality of the confidential informant to his defense, the state is not required to divulge the identity of the informant to the defendant. Ash, 729 S.W.2d at 278; State v. Tidmore, 604 S.W.2d 879, 882 (Tenn. Crim. App. 1980); Carver, 570 S.W.2d at 874-75; Keith, 542 S.W.2d at 842; Dortch, 517 S.W.2d at 26.

This court must now apply the law to the facts of this case to determine if the defendant was entitled to discover the identity of the confidential informants.

## C.

In this case, the defendant stated the sole reason for seeking the identity of the confidential informants was to attack the search warrant during the suppression hearing. He tacitly admitted the confidential informants were not material to the offenses alleged in the indictment because the prosecution was based upon the evidence seized under color of the search warrant, not the purchase of illicit narcotics by the confidential informants. Defense counsel stated he did not expect to find any exculpatory evidence on the taped conversations between the confidential informants and the defendant.

The defendant was not entitled to discover the identity of the informants for the sole purpose of attacking the search warrant. Ash, supra; Wells, supra; Phipps, supra. Also, the defendant failed to establish that the identity of the confidential informants was material to his defense. Ash, 729 S.W.2d at 278; Tidmore, 604 S.W.2d at 882; Carver, 570

8

S.W.2d at 874-75; <u>Keith</u>, 542 S.W.2d at 842; <u>Dortch</u>, 517 S.W.2d at 26. Consequently, the state was not required to divulge the identity of the confidential informants to the defendant. In short, the trial court did not abuse its discretion in denying the defendant's motion to compel the discovery of the confidential informants in this case.

**D.**

The defendant contends he was entitled to a copy of the tape-recorded conversations between the confidential informants and himself. He argues the audio tape is discoverable pursuant to Tenn. R. Crim. P. 16(a)(1)(A). The state has not addressed this subissue.

The defendant filed a general motion for discovery. The only reference in the motion to "statements made by the defendant" refers to a written or oral statement against interest pursuant to Tenn. R. Crim. P. 16(a)(1)(A). As previously stated, immediately prior to the suppression hearing defense counsel moved the trial court for the entry of an order requiring the state to furnish the defendant with a copy of the audio tape, or, in the alternative, a transcript of the audio tape. When the state refused to furnish either a copy of the audio tape or a transcript of the audio tape, defense counsel moved to compel discovery. The trial court denied the request.

**(1)**

The defendant in a criminal prosecution has the right "to inspect and copy or photograph: any <u>relevant</u> written or <u>recorded statements</u> made by the defendant, or copies thereof, within the possession, custody or control of the State, the existence of which is known, or by the exercise of due diligence may become known, to the district attorney general." Tenn. R. Crim. P. 16(a)(1)(A) (emphasis added). The phrase "recorded statements" is broad enough to encompass audio tape recordings of conversations between a confidential informant and a defendant during the course of an investigation unless it is obvious the "recorded statements" cannot be relevant to any issue. <u>See United</u>

9

States v. Bailleaux, 685 F.2d 1105, 1114 (9th Cir. 1982); United States v. Taylor, 707 F. Supp. 696, 700 (S.D. N.Y. 1989); United States v. Feola, 651 F. Supp. 1068, 1141 (S.D. N.Y. 1987), cert. denied sub nom., Marin v. United States, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989); Hamilton v. State, 496 So.2d 100, 106-07 (Ala. Crim. App. 1986).

In this case, the conversations were recorded, the defendant was a party to the conversations, and the audio tape was in the possession of either the assistant district attorney general or the Hardin County Sheriff's Department. Thus, the pivotal question this court must determine is whether the content of the audio tape was relevant within the meaning of Rule 16(a)(1)(A).

## (2)

The term "relevant," as used in Rule 16(a)(1)(A), means relevant to the crimes alleged in the indictment. United States v. Disston, 612 F.2d 1035, 1037 (7th Cir. 1980); United States v. Skillman, 442 F.2d 542, 550 (8th Cir. 1971); United States v. Garrett, 305 F. Supp. 267, 268 (S.D. N.Y. 1969). However, not every "statement" which pertains to the crimes alleged in the indictment is "relevant." Disston, 612 F.2d at 1037.

The word "relevant" is defined in the following manner: "a: having significant and demonstrable bearing on the matter at hand; b: affording evidence tending to prove or disprove the matter at issue or under discussion, c: having social relevance." Webster's Ninth New Collegiate Dictionary, 995 (1984). A legal dictionary defines the word "relevant" in the following manner: "Applying to the matter in question; affording something to the purpose." Black's Law Dictionary, 1160 (5th ed. rev. 1979). Rule 401, Tennessee Rules of Evidence, defines the phrase "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The term "relevant," as used in Rule 16(a)(1)(A), does not create a high threshold. United States v. Yunis, 867 F.2d 617, 621 (D.C. Cir. 1989). The production of most statements has become "practically a matter of right without a showing of materiality." United States v. Haldeman, 559 F.2d 31, 75, n.80 (D.C. Cir. 1976), cert. denied sub nom.,

10

Mitchell v. United States, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

As previously stated, the sole purpose for the two purchases of illicit narcotics from the defendant and the recording of the conversations between the confidential informants and the defendant was to establish probable cause to support the issuance of the search warrant. The defendant was not prosecuted for the two sales made to the confidential informants. The confidential informants did not testify at either the suppression hearing or the trial. The audio tape was not played on either occasion. Nor did the prosecution mention or allude to the audio tape or the two sales of illicit narcotics to the confidential informants. The prosecution was limited to the quantity of illicit narcotics seized under color of the search warrant. Thus, the only issue the jury had to decide was whether the defendant was guilty of possessing the two quantities of illicit narcotics with intent to sell.

In summary, the content of the audio tape was not "relevant" within the meaning of Rule 16(a)(1)(A), Tennessee Rules of Criminal Procedure. The content of the audio tape involved two crimes which were not alleged in the indictment. Disston, 612 F.2d at 1037; Skillman, 442 F.2d at 550; Garrett, 305 F. Supp. at 268. Defense counsel candidly stated he did not expect to find any exculpatory information on the tape; and the audio tape was not material to the crimes alleged in the indictment.

(3)

This court understands and appreciates the district attorney general is placed on the horns of a dilemma by this court's holding that audio tapes containing a defendant's statements to a confidential informant are discoverable if relevant. Disston, 612 F.2d at 1037-38; see Skillman, 442 F.2d at 550-51; Garrett, 305 F. Supp. at 268. Most of the cases discussing the privilege of the state to maintain the anonymity of a confidential informant were written prior to the enactment of the Tennessee Rules of Criminal Procedure. The opinions following the enactment of the rules have not addressed the discoverability of defendant-confidential informant recorded statements. The issue is squarely presented in this case.

The state may shield the identity of a material confidential informant seeking a

protective order pursuant to Tenn. R. Crim. P. 16(d)(1).  See United States v. Pelton, 578 F.2d 701, 707 (8th Cir. 1978), cert. denied sub nom., Rich v. United States, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978).  When appropriate, the state can seek a protective order ex parte.  Id.  Cases involving confidential informant-defendant conversations qualify for an ex parte hearing.  See Pelton, 578 F.2d at 707.  If the rule was otherwise, the state's ability to protect the identity of the informant would be an effort in futility.

This court can review the ex parte granting of a protective order.  The rule provides that "the entire text of the party's statement shall be sealed and preserved in the records of the court to be made available to the [appellate] courts in the event of an appeal." Tenn. R. Crim. P. 16(d)(1).

This issue is without merit.

**II.**

The defendant contends the confidential informants, who were paid to make purchases of illicit narcotics, were agents of the Hardin County Sheriff's Department.  As a result, the confidential informants are "subject to the same scrutiny as a government official under the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution."  He argues the informants, who were wearing a device which transmitted the transactions between the defendant and confidential informants, "became the eyes and ears of the police."  He concludes that the property seized under color of the search warrant should have been suppressed because the affidavit supporting the issuance of the warrant contained information which was illegally and unlawfully obtained by law enforcement officers.

The State of Tennessee contends the defendant's argument is predicated upon a false premise.  The state argues "it does not matter whether the informant, who was wearing a 'wire' and who bought drugs from the defendant in the defendant's residence, is considered an 'agent of the State.'"  The state reasons the defendant opened the door to his home, admitted the informants for the purpose of selling illicit narcotics to the informants, and ultimately sold illicit narcotics to the informants.  As a result, the informants did not intrude upon the sanctity of the defendant's residence or the privacy of his life.

12

**A.**

The defendant correctly contends that evidence seized pursuant to an unreasonable search and seizure cannot be used to establish probable cause for the issuance of a search warrant. Bewley v. State, 208 Tenn. 518, 347 S.W.2d 40 (1961); State v. Bowling, 867 S.W.2d 338 (Tenn. Crim. App. 1993). See United States v. Reyes, 922 F. Supp. 818 (S.D.N.Y. 1996). When a search warrant is issued solely on the strength of an affidavit predicated upon facts obtained as a result of an unreasonable search and seizure, the evidence seized under color of the search warrant must be suppressed. Id. If the affidavit alleges facts seized under color of a search warrant, but alleges additional facts in support of the issuance of the search warrant, the information cannot be considered in determining whether the affidavit establishes the requisite probable cause. If the affidavit states probable cause independently of the tainted facts, the accused is not entitled to have the evidence seized under color of the search warrant suppressed.

In Bewley, the sheriff of Washington County and three of his deputies searched the exterior of Bewley's residence and yard for "white whiskey" without the benefit of a search warrant. 208 Tenn. at 519, 347 S.W.2d at 41. The sheriff and his deputies discovered fruit jars containing "white whiskey" beneath the back steps. The sheriff did not seize the jars. Instead, the sheriff went to the office of the Johnson City chief of police and had the chief apply for and obtain the issuance of a search warrant predicated solely upon the information the sheriff acquired by the former warrantless search of Bewley's premises. Id. The fruit jars containing the "white whiskey" were seized under color of the search warrant. Bewley was prosecuted for possession of the "white whiskey," and he was convicted of the offense. The Tennessee Supreme Court ruled the search warrant obtained by the chief of police was void. 208 Tenn. at 520, 347 S.W.2d at 41.

In Bowling, a Nashville police officer was investigating a hit-and-run accident which resulted in the death of a person who was walking on the shoulder of the roadway. 867 S.W.2d at 339. The officer received an anonymous telephone call three days after the accident. The caller advised the officer the vehicle involved in the hit-and-run accident could be found at Bowling's residence. Id. The officer, accompanied by another Nashville

police officer and one Wilson County deputy sheriff, went to Bowling's residence. Id at 339-40. No one was home. One of the officers saw a brown Ford Bronco in the garage. Another officer got on his hands and knees to look into the garage through an eighteen-inch opening at the bottom of the garage door. With his head almost on the ground, the officer was able to see the brown Bronco and determined there was damage to the front of the vehicle. Id. at 340. The officer subsequently obtained a search warrant based upon the information he obtained from the warrantless search, which the court found to be unreasonable. In determining whether the affidavit used to obtain the search warrant contained sufficient probable cause, this court found that the evidence used to obtain the search warrant was tainted, and, therefore, the evidence seized should have been suppressed. Id. at 341-42.

The question which this court must now consider is whether the use of confidential informants to obtain the information used in the issuance of the search warrant made the informants the alter ego of the Hardin County Sheriff's Department.

**B.**

The courts have recognized law enforcement's need to use undercover officers and confidential informants to deter criminal activity. In Lewis v. United States, the United States Supreme Court said:

> Both petitioner and the Government recognize the necessity for some undercover police activity. . . . Indeed, it has long been acknowledged by the decisions of this Court . . . that, in the detection of many types of crime, the Government is entitled to use decoys and to conceal identity of its agents.

385 U.S. 206, 208-209, 87 S.Ct. 424, 426, 17 L.Ed.2d 312, 315 (1966).

The constitutional provisions contained in the Bill of Rights and the constitutional rights provided by the Tennessee Constitution protect an accused from unreasonable searches and seizures. As the Supreme Court said in Lewis: "[t]he various protections of the Bill of Rights, of course, provide checks upon such official deception for the protection of the individual." 385 U.S. 209, 87 S.Ct. at 426, 17 L.Ed.2d at 315.

14

The facts peculiar to each case are to be considered in determining whether the undercover officer or confidential informant has violated the constitutional provisions which are designed to protect the accused. Courts have held that a confidential informant, whether paid or promised relief in a criminal prosecution, can be used to detect criminal activity. See United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lewis, supra; On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

This court must resolve whether the means used to obtain the information contained in the affidavit constituted an unreasonable search and seizure.

## C.

The decisions of the United States Supreme Court, the Tennessee Supreme Court, and this court have held that, as a general rule, the audio recording of a conversation with a suspect or the transmitting of the conversation to a law enforcement officer at a remote location, which is simultaneously monitored and recorded by the officer, does not violate the Fourth Amendment to the United States Constitution or Article I, § 7 of the Tennessee Constitution. United States v. White, supra; Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); On Lee v. United States, supra; State v. Jones, 598 S.W.2d 209, 221-24 (Tenn. 1980); State v. Crawford, 783 S.W.2d 573 (Tenn. Crim. App.), per. app. denied (Tenn. 1989). Of course, this evidence may be inadmissible if there is a Fourth Amendment violation or the violation of another constitutional right.

When the suspect permits a confidential informant into his residence, and he freely and voluntarily talks to the confidential informant, the suspect has no expectation of privacy regarding the conversation. United States v. White, 401 U.S. at 751-52, 91 S.Ct. at 1125-26, 28 L.Ed.2d at 459; see Lopez, 373 U.S. at 438, 83 S.Ct. at 1387, 10 L.Ed.2d at 470. As the United States Supreme Court said in Hoffa, no matter how strongly the suspect may trust a person, the suspect's expectations of trust are not protected by the Fourth Amendment when the suspect discovers his apparent colleague is a confidential informant working with a law enforcement officer. See White, 401 S.W.2d at 749, 91 S.Ct. at 1129,

15

28 L.Ed.2d at 457.

In On Lee v. United States,[1] Chin Poy, the confidential informant,[2] was an old acquaintance and former employee of On Lee. Agent Lee, of the Bureau of Narcotics, wired Chin Poy with a small microphone and an antenna along one arm. Chin Poy went inside On Lee's business and engaged him in conversation. Agent Lee remained outside the building. He could hear the conversation on a receiver, and he could see Chin Poy and On Lee talking through a large window in front of the business. On a second occasion, Chin Poy engaged On Lee in a conversation in New York City. On Lee made "damaging admissions" during his conversations with Chin Poy. The United States Supreme Court ruled "[t]he conduct of Chin Poy and agent Lee did not amount to an unlawful search and seizure such as is prescribed by the Fourth Amendment." 343 U.S. at 751, 72 S.Ct. at 971.

In Lopez v. United States, an Internal Revenue Service agent advised Lopez he owed the United States excise taxes for several years. Lopez gave the agent $420 in cash and promised the agent and his family certain amenities at his motel. Lopez advised the agent he wanted him to return to his motel on an agreed date. The agent reported what had occurred to his superiors. He was advised to go to the motel and meet with Lopez on the date set by Lopez. When the agent went to meet Lopez, he was equipped with a pocket wire recorder. All of the conversations between Lopez and the agent were recorded. Lopez contended the conversations in his office were seized within the meaning of the Fourth Amendment, and sought to suppress the statements as evidence. The Supreme Court rejected his Fourth Amendment claim, and ruled the recorded conversations were properly admitted into evidence. 373 U.S. at 438, 83 S.Ct. at 1387.

In United States v. White, Jackson, a government informant, was wired with a radio transmitter when he engaged White in conversation on eight separate occasions. The agents who wired Jackson monitored all of the conversations through a radio receiver.

---

[1] In United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), the United States Supreme Court concluded the holding in On Lee was sound. However, the Court said the reasoning that there was no trespass was no longer applicable in view of its holding in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

[2] The prosecution referred to Chin Poy as "an undercover agent." The defense referred to him as "a stool pigeon."

16

These conversations were introduced at White's subsequent trial for illegal narcotics transactions. The Supreme Court held there was no violation of the Fourth Amendment. The Court, quoting Hoffa, said "'no interest legitimately protected by the Fourth Amendment is involved,'" because the Fourth Amendment "affords no protection to 'a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.'" 401 U.S. at 749, 91 S.Ct. at 1125, 28 L.Ed.2d at 457. The Court further noted:

> No warrant to "search and seize" is required in such circumstances [found in Hoffa], nor is it when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, Lewis v. United States, . . . or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence. Lopez v. United States . . . .

401 U.S. at 749, 91 S.Ct. at 1125, 28 L.Ed.2d at 457. The Court found the Fourth Amendment was not violated. The Court concluded that if the circumstances found in Hoffa and Lewis did not violate the Fourth Amendment, it is not violated by "a simultaneously recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." 401 U.S. at 751, 91 S.Ct. at 1126, 28 L.Ed.2d at 458.

The Tennessee Supreme Court has held the recording of conversations between a confidential informant and the accused does not violate either the federal or the state constitution. State v. Jones, 598 S.W.2d 209, 221-24 (Tenn. 1980). In Jones, the agent was wired and the law enforcement officer monitored the conversation between the accused and the confidential agent. The court held these recorded conversations were admissible as evidence.

This court has also held the recording of conversations between a confidential informant and an accused does not violate either the federal or the state constitution. In Woodson v. State, 579 S.W.2d 893 (Tenn. Crim. App. 1978), cert. denied (Tenn. 1979), there were taped telephone conversations between the confidential informant and the defendant. Also, the confidential informant was provided with a small tape recorder to

17

record additional conversations. This court held the recorded conversations were admissible as evidence because there was no constitutional violation. Later, in State v. Crawford, 783 S.W.2d 573 (Tenn. Crim. App.), per. app. denied (Tenn. 1989), the confidential informant wore a body wire when he engaged the defendant in conversation. The conversation was monitored and recorded by a law enforcement officer. This court held the recorded conversation was admissible as evidence. See State v. Mosher, 755 S.W.2d 464 (Tenn. Crim. App.), per. app. denied (Tenn. 1988); State v. Morris, 666 S.W.2d 471 (Tenn. Crim. App. 1983), per app. denied (Tenn. 1984).

Contrary to the defendant's contention, the information received by the deputy sheriff by monitoring and recording the conversations between the defendant and the confidential informants was not the result of an unreasonable search and seizure. The information obtained from these conversations could be used to establish probable cause for the issuance of a warrant authorizing the search of the defendant's residence, the premises where the two drug transactions occurred.

This issue is without merit.

## III.

The defendant contends the description of the premises to be searched contained in the search warrant was insufficient to pass constitutional muster pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution. The description of the premises contained in the search warrant is:

> To be searched for in accordance with the laws of the State of Tennessee upon the following described property, namely, Rt. 1, Box 276, Counce, Tenn. 38326 (911 address is 210 Preacher Drive, Counce Tn. 38326). Beginning at the intersection of Highway 57 and Red Sulpher Road in Counce Tenn. proceed South [o]n Red Sulpher Road to the 1st road on the right which is Preacher Road, then proceed right (west) on the nest (sic) road which is Campbell's Old Mill Road. Then right to the 1st driveway which is the residence to be searched. There is a black mailbox at the end of the driveway with the number "276" on it. The house is a red brick single story house with gray trim and a black shingle roof. There is an in-ground swimming pool in the back yard enclosed by a wooden fence.

18

The question this court must resolve is whether the description of the defendant's residence, the property to be searched, was sufficient to pass constitutional muster.

**A.**

The Fourth Amendment to the United States Constitution requires that a search warrant must particularly describe the premises to be searched. This amendment states:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and <u>particularly describing the place to be searched</u>, and the persons or things to be seized (emphasis added).

The Framers of the Constitution included the phrase "particularly describing the place to be searched, and the person or things to be seized" to prevent the issuance of general warrants, a practice which was prevalent during the colonial era of this country. <u>See</u> T. Taylor, <u>Two Studies in Constitutional Interpretation</u>, pp. 23-50 (1969) (Taylor); Charles H. Whitebread & Christopher Slobogin, <u>Criminal Procedure</u>, § 5.04 at p. 152 (3d ed. 1993)(Whitebread).

The United States Supreme Court has ruled the Fourth Amendment is enforceable against the states through the Due Process Clause of the Fourteenth Amendment. <u>Mapp v. Ohio</u>, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961). Thus, an accused has a Fourth Amendment right to challenge a search warrant which fails to "particularly describe the place to be searched."

Article I, Section 7 of the Tennessee Constitution governs search warrants in this jurisdiction. This constitutional provision states:

> That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not be granted.

19

Although this provision does not state on its face the property or premises must be particularly described in the search warrant, the appellate courts have held this provision mandates a particular description of the property or premises to be searched. State v. Bostic, 898 S.W.2d 242, 245-46 (Tenn. Crim. App. 1994), per. app. denied (Tenn. 1995); State v. James C. Nelson and Alicia Nelson, Davidson County No. 01-C-01-9505-CC-00127, 1996 WL 233987 (Tenn. Crim. App., Nashville, May 9, 1996), per. app. denied (Tenn. October 28, 1996). The prohibition against the issuance of general warrants necessarily embraces the need to "particularly describ[e] the place to be searched, and the persons or things to be seized." See Taylor at 23-50; Whitebread, § 5.04 at 152. This requirement and the probable cause requirement are the ingredients which prevent the issuance of general warrants.

This requirement is also statutorily mandated. Tennessee Code Annotated § 40-6-103 provides that "[a] search warrant can only be issued on a probable cause, supported by affidavit, naming or describing the person and particularly describing the property, and the place to be searched." See Tenn. Code Ann. § 40-6-106. In Dolen v. State, 187 Tenn. 663, 216 S.W.2d 351 (1948), the supreme court said:

> It is expressly required. . .[by the statute] that the search warrant "particularly" describe "the place to be searched." The word "particularly" must be deemed to have been intentionally used by the legislature. The use of that word makes it clear that the legislature intended the search warrant to be clear of ambiguity as to the place to be searched, and that this word was used in response to the constitutional prohibition against an unreasonable search.

187 Tenn. at 667, 216 S.W.2d at 353.

This requirement is mentioned in Rule 41(c), Tennessee Rules of Criminal Procedure. The rule states in part: "If the magistrate is satisfied that grounds for the application exists . . . [he] shall issue a warrant identifying the property and naming or describing the person or place to be searched."

The purpose of requiring the property or premises to be particularly described in the search warrant is twofold. First, this requirement protects the accused from being subjected to an unreasonable search and/or seizure. Williams v. State, 196 Tenn. 630, 632, 270 S.W.2d 184, 185 (1954). Second, this requirement "prevent[s] the officer from

20

searching the premises of one person under a warrant directed against those of another." Squires v. State, 525 S.W.2d 686, 690 (Tenn. Crim. App.), cert. denied (Tenn. 1975).

The question this court must next consider is what constitutes a constitutionally permissible description of the property or premises to be searched.

**B.**

The issue raised by the defendant has been addressed by numerous Tennessee Supreme Court and Court of Criminal Appeals decisions. The reported and unreported decisions are legion.

In State v. Smith, 868 S.W.2d 561 (Tenn. 1993), cert. denied, 513 U.S. 960, 115 S.Ct. 417, 130 L.Ed.2d 333 (1994), the supreme court said that "a description which particularly points to a definitely ascertainable place so as to exclude all others, and enables the officer to locate the place to be searched with reasonable certainty without leaving it to his discretion" is required to satisfy the constitutional mandates.[3] 868 S.W.2d at 572. See Bostic, 898 S.W.2d at 245. The most cited and quoted case is Hatchett v. State, 208 Tenn. 399, 346 S.W.2d 258 (1961). In Hatchett, the supreme court said: "The rule is that the property to be searched must be particularly described in the search warrant before it is valid. The test is whether, or not, the description will enable an officer to locate the place to be searched with reasonable certainty." 208 Tenn. at 401, 346 S.W.2d at 259.

The conclusion which may be drawn from the prior decisions is that the description of the property or premises to be searched must be sufficient to permit a reasonable person to take the search warrant, as prepared, and go immediately to the premises to be searched without difficulty or without asking directions regarding the location of the property. Williams, 196 Tenn. at 632, 270 S.W.2d at 185. See Thompson v. State, 197 Tenn. 112, 114-15, 270 S.W.2d 379, 380-81 (1954).

This court must now apply the test created by the decisions of the appellate courts to the description contained in the search warrant authorizing the search of the defendant's

---

[3]This language was first used in the case of Thompson v. Carson, 186 Tenn. 170, 173, 208 S.W.2d 1019, 1020 (1948).

21

residence.

## C.

The description contained in the search warrant is sufficient to pass constitutional, statutory and regulatory muster. See Norton v. State, 207 Tenn. 656, 659, 343 S.W.2d 361, 362 (1961). The description told the officers how to reach the defendant's residence and provided a description of the residence, including the color of the bricks, the color of the trim, the presence of a swimming pool located in the backyard behind a wooden fence, the color of the mailbox, and the presence of the number "276" on the exterior of the mailbox. The warrant states the address of the premises is Route 1, Box 276, and the (911) address is 210 Preacher Drive.

This court is of the opinion a reasonably prudent law enforcement officer could find the defendant's residence immediately and without difficulty by following the description of the premises contained in the search warrant. It must be remembered that the description of the property does not have to adhere to the same minuscule detail which a deed must contain when there is a transfer of real property. Bostic, 898 S.W.2d at 245.

This issue is without merit.

## IV.

The defendant contends the trial court committed error of prejudicial dimensions by failing to order the district attorney general to grant him pretrial diversion. He argues he filed a proper application for pretrial diversion, the state failed to answer or respond to the application, and he concludes the trial court should have granted him pretrial diversion for this reason. The State of Tennessee contends this issue has been waived. See State v. Wilson, 713 S.W.2d 85, 86-87 (Tenn. Crim. App.), per. app. denied (Tenn. 1986).

The first time this issue was raised was in the defendant's motion for a new trial. The trial court noted the defendant never brought this issue to the court's attention prior to trial, and he did not ask for a hearing on the issue. It is undisputed the district attorney general did not file a response to the defendant's application. The assistant district

22

attorney general stated: "I did not really consider that a serious application at that time, I don't guess."

First, it was the duty of the defendant to bring this matter to the attention of the trial court prior to trial. The trial court could either (a) order the district attorney general to file a response to the application or (b) hear the matter without the benefit of the district attorney general's response. Since the defendant failed to take the necessary steps to bring this matter to the trial court, the defendant is not entitled to relief. Tenn. R. App. P. 36(a). Second, the defendant was required to raise this issue prior to trial by either filing an interlocutory appeal pursuant to Tenn. R. App. P. 9, or an extraordinary appeal pursuant to Tenn. R. App. P. 10. See State v. Bowlin, 871 S.W.2d 170, 173 (Tenn. Crim. App. 1993); State v. Nabb, 713 S.W.2d 685, 686 (Tenn. Crim. App. 1986); Wilson, 713 S.W.2d at 86-87; State v. McDuff, 691 S.W.2d 569, 570 (Tenn. Crim. App. 1984) per. app. denied (Tenn. 1985); State v. Montgomery, 623 S.W.2d 116, 118 (Tenn. Crim. App.), per. app. denied (Tenn. 1981). The failure to pursue an interlocutory or extraordinary appeal in pretrial diversion matters results in the waiver of the issue. Wilson, 713 S.W.2d at 86-87.

Today, a defendant may appeal the denial of pretrial diversion as part of the appeal as of right, Tenn. R. App. P. 3(b). Rule 38, Tennessee Rules of Criminal Procedure, states in part "the defendant may pursue an interlocutory appeal pursuant to either Rule 9 or Rule 10 of the Tennessee Rules of Appellate Procedure. In the event the defendant does not pursue an interlocutory appeal, the defendant shall have the right to appeal the decision of the trial court denying the petition for writ of certiorari pursuant to Tennessee Rule of Appellate Procedure 3(b) following the entry of the final judgment in the trial court." This rule became effective on July 1, 1997. See Tenn. R. Crim. P. 38 advisory commission comments.

The Tennessee Supreme Court has applied rules of procedure retroactively in the past. In State v. Enochs 823 S.W.2d 539, 540-41 (Tenn. 1991), the supreme court held Tenn. R. Crim. P. 33(f), the thirteenth juror rule, should be applied retroactively to cases which were tried before the rule became effective and were pending in the appellate courts on the effective date of the rule. Enochs was followed by the supreme court in State v. Barone, 852 S.W.2d 216, 219 (Tenn. 1993). However, it is questionable whether Enochs

23

and Barone should be applied to the facts in this case. Unlike the defendants in Enochs and Barone, who were not entitled to the benefit of the thirteenth juror rule prior to the effective date of the rule, the defendant here had the right to appellate review pursuant to Tenn. R. App. P. 9 or Tenn. R. App. P. 10.

Assuming arguendo Tenn. R. Crim. P. 38 could be applied retroactively in this case pursuant to the rationale of Enochs and Barone, this court would not be able to review the issue. As previously noted, the defendant did not bring this matter to the attention of the trial court prior to trial. Thus, there was no hearing in the trial court, and, as a result, there is no record for this court to review. It is elementary that an appellate court may only review what is contained in the record -- not what might have been or should have been included in the record. Dearborne v. State, 575 S.W.2d 259, 264 (Tenn. 1978). The allegations contained in an application for pretrial diversion are not evidence and cannot replace the necessity of a hearing and the memorializing of the hearing by a transcript of the hearing. See State v. Richardson, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993), per. app. denied (Tenn. 1994); State v. Aucoin, 756 S.W.2d 705, 716 (Tenn. Crim. App.), cert. denied, 489 U.S. 1084, 109 S.Ct. 1541, 103 L.Ed.2d 845 (1989); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App.), per. app. denied (Tenn. 1988).

This issue is without merit.

**V.**


The trial court sentenced the defendant to serve one year in the Hardin County Jail with the balance of the sentences to be served pursuant to the Tennessee Community Corrections Act of 1985. Tenn. Code Ann. §§ 40-36-101, et. seq. The defendant contends his entire sentence should be served pursuant to the Act. He also contends the trial court abused its discretion by refusing to apply a mitigating factor, Tenn. Code Ann. § 40-35-113(1). The State of Tennessee argues the sentence imposed by the trial court was proper given the defendant's prior criminal record and the circumstances of the offenses. Furthermore, the trial court properly rejected the mitigating circumstance due to the nature of the offense and the prior decisions of this court.

24

**A.**

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court when sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance while testifying.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

**B.**

The trial court found one enhancement factor, namely, the defendant has a history of prior convictions or criminal behavior. Tenn. Code Ann. § 40-35-114(1). The defendant

25

was previously convicted of public intoxication, driving without a license, possession of drug paraphernalia, driving while under the influence, and possession of marijuana. In addition, the defendant told the presentence officer he had a history of drug use. Of course, each time he obtained drugs for his personal use he committed a separate crime.

The defendant asked the trial court to find one mitigating factor, namely, his conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). The court refused to find this mitigating factor in this case. This court has held this factor should not be applied when the defendant is convicted of an offense involving cocaine. State v. Keel, 882 S.W.2d 410, 422 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Michael Anthony Pike, Henry County No. 02-C-01-9509-CC-00261, 1997 WL 13740 (Tenn. Crim. App., Jackson, January 16, 1997), per. app. denied (Tenn. September 15, 1997); State v. Larry D. Jones, Davidson County No. 01-C-01-9112-CR-00368, 1992 WL 146719 (Tenn. Crim. App., Nashville, June 30, 1992), per. app. denied (Tenn. October 26, 1992). See State v. Kenny Cheatham, Williamson County No. 01-C-01-9506-CC-00196, 1996 WL 310405 (Tenn. Crim. App., Nashville, June 11, 1996). Thus, the trial court properly refused to apply this mitigating factor.

## C.

The defendant also contends the trial court abused its discretion by refusing to permit him to serve the entire sentences pursuant to the Community Corrections Act. The trial court required the defendant to serve twelve months of his eighteen-month sentence in the county jail with the balance of the sentence served pursuant to the Act.

The defendant was convicted of a Class B felony and a Class E felony. As a practical matter, this issue must rise or fall upon the Class B felony. While there is a presumption the defendant is a favorable candidate for alternative sentencing as to a Class E felony, there is no such presumption when the defendant is convicted of a Class B felony. Tenn. Code Ann. § 40-35-102(6)

The trial court did not abuse its discretion by requiring the defendant to serve a portion of his sentence. The defendant has been convicted of several criminal offenses.

26

He also has a history of criminal behavior.  He made two sales of illicit narcotics.  He apparently trafficked in illicit narcotics for an extended period of time.  He candidly admitted to the presentence officer that he was a user of illicit narcotics.

This issue is without merit.


_____
JOE B. JONES, PRESIDING JUDGE




CONCUR:



_____
JOHN H. PEAY, JUDGE



_____
JOE G. RILEY, JUDGE