# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs at Knoxville, October 30, 2001

## STATE OF TENNESSEE v. CHRISTOPHER D. LANIER

**Appeal from the Criminal Court for Shelby County**
No. 99-01307    Arthur T. Bennett, Judge

---

### No. W2001-00379-CCA-R3-CD - Filed February 1, 2002

---

The defendant, Christopher D. Lanier, was convicted by a Shelby County jury of possession of one-half gram or more of cocaine with intent to deliver, and the trial court sentenced him as a Range I offender to incarceration for nine years in the Department of Correction. On appeal, he challenges the sufficiency of the convicting evidence and the trial court's decision to not require a police officer who testified for the state to reveal the identity of a confidential informant. Finding no error warranting reversal, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Coleman W. Garrett, Memphis, Tennessee, for the Appellant, Christopher D. Lanier.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Julie Mosley, Theresa McCusker and Lee Coffee, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

In April 1998, in response to complaints that drugs were being sold at a house located at 781 Walnut Street in Memphis, Memphis Police Officer Jerome Bussey arranged a "probable cause buy" of cocaine via a confidential informant. The informant's activities in buying cocaine at the front door of 781 Walnut Street were partially observed by the officer, although the officer could not discern who was transacting with the informant. The "bought" substance was retrieved from the informant and subjected to a police department field test that indicated the presence of cocaine. Beginning the next day, Officer Bussey, in an undercover mode, observed the house on two successive days. During this surveillance, he observed the defendant and his two co-defendants approaching cars in front of the house and engaging in "hand-to-hand exchanges" with occupants

of the cars. Officer Bussey testified that "[s]omebody would go in their pocket and the other person would go in their pocket . . . and then they'd leave in 30-40 seconds, maybe a minute at most."

On April 9, 1998, the next day following these investigative activities, the officer obtained a search warrant. When the police arrived at 781 Walnut Street on April 9 to execute the warrant, the defendant and his co-defendants were outside the house. They were detained and taken inside. An adult female was present, and there were five or six children in the house. Executing the warrant, the police officers discovered three plastic bags containing 38 rocks of cocaine in a refrigerator freezer compartment. Officer Bussey testified that, in response to police questioning at the scene after the contraband was discovered, the defendant and a co-defendant, Brian Knox, admitted that they lived the residence.

When Officer Bussey testified at trial, defense counsel asked him to identify the confidential informant who facilitated the "probable cause buy." The prosecutor objected to the witness having to identify the informant, and the trial judge sustained the objection.

The defendant's sole witness was his wife, Shirley Baldwin. She testified that on April 9, 1998 she and the defendant were dating but yet to be married. She lived at 781 Walnut Street a house owned by her grandmother which she shared with her four children and her cousin, Bryan Knox, a co-defendant at the defendant's trial. Ms. Baldwin further testified that the defendant lived elsewhere with his mother, although he stayed "off and on" with her at the 781 Walnut Street address. She and the defendant worked in the same department of a packing company, and on April 9, 1998, they left work together and arrived at 781 Walnut Street at about 4:00 pm. Present at the house at that time were Marquis Wright, who was another co-defendant, Cedric Holmes, and Ms. Baldwin's cousin, Sylvia Hunt. After approximately an hour, Ms. Baldwin left.

She later learned that the officers executed a search warrant at the premises and found cocaine in a refrigerator freezer in the kitchen. She testified that two refrigerators were located in the kitchen. One belonged to her and the other belonged to her cousin, co-defendant Brian Knox, who lived at the residence. She testified that she looked inside her refrigerator's freezer compartment before going to work on April 9, and her freezer contained no drugs. She did not know whether the police found the drugs in her freezer or in Knox's freezer. She testified that a number of people regularly had access to the kitchen area of the house, including Wright, Holmes, and Baldwin's cousin, Sylvia Hunt, who had an extensive history of drug arrests. Ms. Baldwin testified that, although she herself had been convicted of passing a worthless check, she was not involved with drugs and had no drug convictions.

After hearing the evidence, the trial jury acquitted the defendant of possession of cocaine with intent to sell but convicted him of possession with intent to deliver, based upon the cocaine found in the freezer.

In his first issue, the defendant challenges the sufficiency of the convicting evidence. Specifically, he complains that the evidence fails to establish that the defendant possessed the cocaine that was found in a freezer located at 781 Walnut Street.

It is well established that a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the theory of the state. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978); *State v. Townsend*, 525 S.W.2d 842, 843 (Tenn. 1975). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978).

Moreover, a verdict against the defendant removes the presumption of innocence and raises a presumption of guilt on appeal, *State v. Grace*, 493 S.W. 2d 474, 476 (Tenn. 1973); *Anglin v. State*, 553 S.W.2d 616, 620 (Tenn. Crim. App. 1977), which the defendant has the burden of overcoming. *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

Most significantly, where the sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2782 (1979); Tenn R. App. P. 13; *see also*, *State v. Williams*, 657 S.W.2d 405 (Tenn. 1983). This rule applies to findings based on both direct and circumstantial evidence. *State v. Thomas*, 755 S.W.2d 838, 842 (Tenn. Crim. App. 1988). Circumstantial evidence alone may be sufficient to convict one of a crime. *State v. Boling*, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992).

In order to establish the defendant's guilt of the Class B conviction offense, the state was required to prove that he knowingly possessed one-half gram or more of cocaine with intent to deliver. *See* Tenn. Code Ann. § 39-17-417(a)(4), (c)(1) (Supp. 2001); *see State v. Transou*, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996).

The primary issue raised as to the sufficiency of the evidence is whether it was established that the defendant possessed the cocaine. Tennessee courts recognize that possession may be "either actual or constructive." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *see also State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). A person constructively possesses a controlled substance when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)); *Bigsby*, 40 S.W.3d at 90. Said differently, constructive possession is the "ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." *Bigsby*, 40 S.W.3d at 90; *see also Cooper*, 736 S.W.2d at 129. "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." *Cooper*, 736 S.W.2d at 129.

In the light most favorable to the state, the evidence reveals that the defendant lived at 781 Walnut Street on April 9, 2001. Although no direct evidence ties him to the cocaine found in the freezer compartment, the evidence introduced without objection at trial showed that the defendant, accompanied by his two co-defendants, Wright and Knox, conducted brief "hand-to-hand

exchanges" with occupants of several cars that stopped in front of the house on the two days preceding the officers' search of the house. This activity, which indicated the distribution of cocaine in light of the confidential informant's purchase of cocaine from someone at the front door of 781 Walnut Street the day preceding the surveillance, circumstantially links the defendant to the cache of cocaine found inside the freezer.

The jury, of course, was free to accredit or discredit Ms. Baldwin's implicit testimony that the cache was found in Knox's freezer and not in her freezer; however, even if the jury accredited her testimony, the circumstantial implication of the defendant's drug-dealing activities at 781 Walnut Street is neither informed nor discredited by the ownership of the freezer where the drugs were found.

The defendant relies upon this court's holding in *Transou* to posit that the evidence is insufficient to establish his possession of the cocaine. In *Transou*, this court reversed convictions for possession of controlled substances based upon insufficient evidence that the occupants of a house possessed the controlled substances found in the house. *Transou*, 928 S.W.2d at 956. The officers in *Transou* conducted a "raid" upon the house and found controlled substances in various locations, but they found no drugs on the persons of the several defendants who were present in the house, with the exception of one defendant whose conviction was affirmed. *Id.* None of the defendants lived at the house. *Id.*

We hold that *Transou* is factually distinguishable from the present case. As in *Bigsby*, the facts in the present case "show more than mere presence and more than mere association with those selling drugs." *See id.* The evidence before us portrays the defendant as a primary actor in dealing in drugs in front of the house at 781 Walnut Street. Moreover, in the light most favorable to the state, the evidence showed that the defendant lived at 781 Walnut Street. Thus, we conclude that the evidence sufficiently supports the defendant's conviction.

In his second issue, the defendant complains that the trial court erred when it disallowed defense counsel to cross-examine Officer Bussey concerning the identity of the confidential informant who made a "probable cause buy" at 781 Walnut Street. However, we need not concern ourselves with whether the trial court erred in making its ruling. The claim was not included in the defendant's written motion for new trial. *See* Tenn. R. Crim. P. 37(c); Tenn. R. App. 3(e) (in cases tried before a jury, no issue of trial court error in the exclusion of evidence shall be reviewable on appeal "unless the same was specifically stated in a motion for new trial"). Although the motion for new trial was arguably amended via defense counsel orally arguing the disclosure issue when he presented the motion for new trial, no such amendment was reduced to writing as is required by Tennessee Rule of Criminal Procedure 33(b). *See* Tenn. R. Crim. P. 33(b) (motion for new trial must be in writing; if made "orally in open court," it "shall be reduced to writing, within thirty days of the date the order of sentence is entered"). Accordingly, in the absence of an appropriate written claim contained within the motion for new trial, the trial court may not be placed in error on this issue. In other words, the issue is waived. Tenn. R. App. P. 3(e).

-4-

Because the failure to properly preserve the issue for appeal was a matter of inadequately drafting or amending the motion for new trial, and because the motion for new trial is not jurisdictional in criminal cases, we have reviewed the case to determine whether the interest of justice justifies appellate review. *See* Tenn. R. App. P. 4(a). We conclude that it does not. Generally, the identity of a confidential informant is privileged. *House v. State*, 44 S.W. 3d 508, 512 (Tenn. 2001); *State v. Vanderford*, 980 S.W.2d 390, 395 (Tenn. Crim. App. 1997). The state is not required to divulge such informant's identity unless (a) disclosure is essential to a fair trial by being relevant to and promotive of a defense, (b) the informant was a participant in or witness to the crime, or (c) the informant has knowledge that is favorable to the defendant. *Vanderford*, 980 S.W.2d at 397. The defendant has the burden of establishing "by a preponderance of the evidence that the confidential informant's identity is material to his defense because the informant was a witness to the crime, participated in the crime, or possesses facts favorable or relevant to the defendant." *Id.*

In the present case, no such materiality was shown. The conviction offense was committed two or three days after the informant made a "probable cause buy." The defendant has not shown that the informant's knowledge is relevant or material to any defense.

Finding no error warranting reversal of the lower court's judgment, we affirm.[1]

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[1] We note that the trial court's judgment bears neither a date of execution nor a date of filing. The trial court clerk has certified that the judgment is a part of the official record in the case, but we can only circumstantially infer that the judgment was entered between the time of sentencing hearing and the filing of the motion for new trial, and we can only infer that the motion for new trial was in fact timely filed. Furthermore, someone has inscribed on the face of the judgment that the motion for new trial was overruled on January 18, 2001, and we infer that the inscription was made *after the entry of the judgment*. (The record also contains an order overruling the motion for new trial.) We urge the trial judge and the trial court clerk to assure that all orders, *especially* judgments, that appear in appellate records duly reflect a filing date and that no one alters a filed judgment to reflect post-judgment developments.