IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 18, 2004

**STATE OF TENNESSEE v. MARY MURR TURNER**

**Direct Appeal from the Circuit Court for Cocke County**
**No. 8737     Ben W. Hooper, II, Judge**

---

**No. E2004-00225-CCA-R3-CD**
**June 14, 2004**

---

The defendant, Mary Murr Turner, pled guilty to accessory after the fact, and the Cocke County trial court sentenced her to one year incarceration as a Range I standard offender. On appeal, the defendant contends the trial court erred in denying probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Susanna L. Thomas, Newport, Tennessee, for the appellant, Mary Murr Turner.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant pled guilty to accessory after the fact, a Class E felony, for concealing evidence of the killing of her husband, Anthony Lynn Turner, by her half-brother, Roger Murr, on November 11, 2001. *See* Tenn. Code Ann. § 39-11-411(a)(2). Pursuant to the plea agreement, the defendant received a one-year sentence as a Range I standard offender with the manner of service to be determined by the trial court. According to the state's recitation of the facts at the plea hearing, Murr shot and killed the victim at the residence of the defendant where Murr's girlfriend, Tammy Trent, also resided. Murr pled guilty to an offense relating to the victim's death and had been sentenced prior to the defendant's plea hearing. Trent pled guilty to accessory after the fact and was sentenced to one year of incarceration at the same time the defendant was sentenced.

The defendant and Trent cleaned the residence after Murr killed the victim. They cleaned up the blood, mopped the floors, patched holes in the wall and in a window with masking tape,

placed stickers over bullet holes in the wall, and disposed of the masking tape. The defendant and Trent made statements to law enforcement in which they admitted performing these acts.

## I.  SENTENCING HEARING

Investigator Robert Caldwell of the Cocke County Sheriff's Department testified the victim, the defendant's husband, was shot eleven times with two different firearms while at the defendant's residence.  As the victim walked onto the back porch and entered the residence through the back door, Murr began shooting, and the victim fell back onto the porch.

Investigator Caldwell testified law enforcement officials observed several bullet holes in the walls, which had been patched with tape, and noted that the back porch had been cleaned.  The officers discovered Trent's fingerprints on the tape covering the bullet holes.  Although neither the defendant nor Trent mentioned cleaning the porch in their statements to the police, officers discovered blood underneath the porch which had dripped through the cracks.

Investigator Caldwell testified both the defendant and Trent stated they were in another room when the shooting occurred.  The investigator opined, "there's no way that you could be in the house with at least 11 shots fired and not hear the shooting."

Special Agent A.R. McCall of the Tennessee Bureau of Investigation testified he observed bullet holes which had been concealed inside the residence.  Agent McCall stated he also removed a bumper sticker, which was clearly visible, from the front side of the back door revealing a bullet hole.  Agent McCall testified Trent gave a statement to the police explaining that while she and the defendant were in the bedroom located in the back of the residence, she heard a noise which sounded like "firecrackers."  Trent and the defendant remained inside the bedroom until Murr knocked on the door and said, "We are going to leave."  Trent informed the police that Murr further stated, "If you see any holes, try covering them up."  Trent stated she then aided the defendant in "fixing" holes.

Agent McCall testified that when he first arrived at the defendant's residence to investigate the shooting, the defendant informed him that the victim had previously attempted to shoot her with a .22 caliber pistol causing a hole in the window located in the back of the residence.  However, when the defendant gave a statement to the police, she admitted lying to Agent McCall regarding the hole in the window.  In her statement, the defendant recalled that upon exiting her residence, she observed a hole in the window located next to the back door and covered it with tape.  The defendant stated she then discarded the roll of tape because she "did not want it there and [she] did not want anything to happen to [her]."

The defendant testified she and the victim were married for ten years and had three children. The defendant described the victim as physically and verbally abusive.  As a result of the victim's abusive behavior during the marriage, the defendant suffered from a broken hand, back injuries, and head injuries which resulted in organic brain damage.  The defendant stated she takes medication to treat seizures caused by her head injuries.

The defendant testified that on the day prior to the incident, she and the victim argued, and the victim struck her and left the residence. On the following day, the victim called the defendant and informed her that he was coming to her residence to retrieve his possessions. The defendant stated she subsequently called Murr and told him that the victim had threatened her and her children and that the victim was coming to her residence. Murr agreed to speak to the victim. The defendant stated "[e]vidently" the victim was killed on this occasion.

The defendant testified that when Murr arrived at the residence, he instructed her and Trent to go into the bedroom located in the back of the residence. The defendant stated she did not observe Murr in possession of a firearm, and she did not hear any shots fired inside the residence. The defendant further stated that upon exiting the bedroom, she did not observe any blood inside the residence or on the back porch. She maintained she "didn't have any idea" that the victim had been killed.

The defendant testified she did not make any efforts to conceal a crime and that she was unaware that a crime had been committed. The defendant maintained she did not clean any blood in the residence and did not patch any holes in the wall. The defendant stated that although she informed law enforcement officials that she placed duct tape over a hole in a window, she did not know how the window was broken. The defendant denied placing stickers over holes in the wall, knowing who covered the holes with stickers, or observing stickers on the walls. The defendant stated she was unaware of whether the holes were caused by bullets. She further stated she gave the roll of duct tape to Trent and instructed her to discard it in order to protect Murr.

The defendant testified she had several prior charges for writing worthless checks. She stated she repaid the checks and costs regarding each charge, and she was unable to recall any of the charges resulting in convictions. The defendant further stated she wrote the worthless checks in order to support her cocaine addiction.

## II. TRIAL COURT'S FINDINGS

At the conclusion of the sentencing hearing, the trial court applied enhancement factor (1), "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" to the defendant's conviction. *See* Tenn. Code Ann. § 40-35-114(1) (Supp. 2001).[1] The trial court further applied several mitigating factors. *See id.* § 40-35-113(2), (4), (8), (10), (12). However, the trial court found statements made by the defendant and Trent during the sentencing hearing were "literally irreconcilable" when compared to their guilty pleas. The trial court noted that as a result, "their credibility has been reduced to almost zero." The court ordered the defendant, as well as Trent, to serve their one-year sentences in confinement.

---

[1]Effective July 2002, the legislature amended Tennessee Code Annotated section 40-35-114 by adding "terrorism" as an enhancement factor. 2002 Tenn. Pub. Acts, ch. 849, § 2(c). This is listed as factor (1), thus renumbering the previous factors as (2) through (23). *See* Tenn. Code Ann. § 40-35-114 (Supp. 2002). Our opinion refers to the enhancement factors as they existed at the time of the offense as specified in Tennessee Code Annotated section 40-35-114 (1997).

## III. STANDARD OF REVIEW

An appellate court's review of a challenged sentence is *de novo* on the record with a presumption the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The Sentencing Commission Comments to this section of the statute indicate the defendant bears the burden of establishing the sentence is improper. When the trial court follows the statutory sentencing procedure and gives due consideration and proper weight to the factors and principles relevant to sentencing, this court may not disturb the sentence. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

## IV. ANALYSIS

An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. Tenn. Code Ann. § 40-35-303(b); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

The trial court applied enhancement factor (1), previous history of criminal convictions or criminal behavior, due to the defendant's history of criminal behavior. *See* Tenn. Code Ann. § 40-35-114(1) (Supp. 2001). The presentence report reveals the defendant had seventeen prior charges of passing worthless checks. The defendant testified the charges did not result in convictions, and the presentence report is unclear regarding this issue. However, criminal behavior which does not result in a conviction may be utilized to enhance a sentence if shown by a preponderance of the evidence. *See* State v. Carico, 968 S.W.2d 280, 287 (Tenn. 1998). Based upon the defendant's testimony in which she stated she wrote the bad checks to support her cocaine addiction, we conclude the trial court properly applied enhancement factor (1). We further note the use of cocaine justifies this enhancement factor even though there was no conviction. *See* State v. Vanderford, 980 S.W.2d 390, 407 (Tenn. Crim. App. 1997) (holding this enhancement factor applied when the defendant admitted to a history of drug use).

-4-

The defendant contends the trial court failed to distinguish between her and co-defendant Trent, who was sentenced at the same sentencing hearing, in evaluating credibility during the sentencing hearing. Although the trial court did not refer to the defendant by name in finding that "their credibility has been reduced to zero," the evidence clearly establishes that this finding applies to the defendant. According to the state's recitation of the facts to which the defendant stipulated at the plea hearing, the defendant pled guilty to accessory after the fact for cleaning up the blood, mopping the floors, patching bullet holes in the walls, and placing masking tape over the window after Murr killed the victim. However, at the sentencing hearing, the defendant denied committing these acts and even denied any knowledge that a crime had been committed. While the defendant testified she patched a hole in a window, she stated she was unaware of the cause of the hole. Based upon this evidence, the trial court found the defendant's testimony to be false. The trial court is in a much better position than this court to make credibility determinations.

In determining a defendant's suitability for total probation, the trial court may properly consider credibility, remorse, and candor as they reflect upon potential for rehabilitation. *See* Tenn. Code Ann. § 40-35-103(5); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983); Nunley, 22 S.W.3d at 289. Had the defendant been truthful, remorseful, and candid, she may well have received probation, as the experienced trial judge implied. The defendant exhibited none of these qualities at the sentencing hearing. The trial court properly denied probation and imposed incarceration.

Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE

-5-