IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 3, 2004 Session

## STATE OF TENNESSEE  v.  CARL E. LEGGETT, SR.

**Direct Appeal from the Circuit Court for Franklin County**
**No. 14250-B     J. Curtis Smith, Judge**

---

**No. M2003-01388-CCA-R3-CD - Filed June 25, 2004**

---

The Defendant, Carl E. Leggett, Sr., was indicted by the Franklin County Grand Jury for possession of .5 grams or more of cocaine with the intent to sell or deliver.  Following a jury trial, the Defendant was convicted of facilitation of possession with intent to sell over .5 grams of cocaine.  The Defendant was sentenced as a Range II multiple offender to serve nine years in confinement and ordered to pay a $70,000 fine.  In this appeal as of right, the Defendant challenges the sufficiency of the convicting evidence.  The Defendant also challenges his sentence.  After a careful review of the record, we reverse the judgment of the trial court on sufficiency grounds and dismiss the charges against the Defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Reversed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. THOMAS T. WOODALL, J., filed a dissenting opinion.

Glen A. Isbell, Winchester, Tennessee, for the appellant, Carl E. Leggett, Sr.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; J. Michael Taylor, District Attorney General; Steven M. Blount, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

Sergeant Danny Mantooth of the Winchester Department of Public Safety Narcotic Division testified that on the afternoon of May 3, 2001, he went to the apartment of Roger Staples to execute a search warrant.  Sergeant Mantooth saw the Defendant in the living room of the apartment as he entered the two-room apartment.  Lieutenant Danny Fay secured the people in that room while Sergeant Mantooth went to the bedroom of the apartment.  In the bedroom, Sergeant Mantooth found Phillip P. M. Smith lying on the bed.  Sergeant Mantooth held Mr. Smith at gunpoint until other officers arrived.  Sergeant Mantooth seized from the bed a plastic bag containing smaller, individual bags of crack cocaine.  From the living room of the apartment, Sergeant Mantooth seized a "beer

top" which held a cigarette cellophane wrapper and four rocks of crack cocaine. The items were lying on the floor beside a wall heater just inside the front door of the apartment. Sergeant Mantooth photographed the items seized from the living room and the bedroom. The Defendant, Richard Hunt, and Roger Staples were lying on the floor in the living room of the apartment when Sergeant Mantooth noticed the items laying on the floor beside the heater. The Defendant was lying closest to the cocaine, within one foot.

Sergeant Mantooth testified that the total weight of the crack cocaine found in the apartment was 13.2 grams, which had a street value of between $2,600 and $5,000. The crack cocaine seized from the bedroom weighed 12.7 grams, and the crack cocaine seized from the living room of the apartment weighed .59 grams. Sergeant Mantooth advised Mr. Hunt, Mr. Staples, and the Defendant of their Miranda rights, and asked the men whose cocaine it was. All three men denied possession of the cocaine. There were two doors to the apartment, but only one door was functional.

Earlier that day, Sergeant Mantooth had conducted a surveillance of Mr. Staples' apartment. Sergeant Mantooth did not see the Defendant, Mr. Staples, or Mr. Hunt go into or out of the apartment during the surveillance. Sergeant Mantooth observed Phillip Smith go into the apartment that afternoon before the search warrant was executed.

Richard Hunt lived in an apartment across the street from Roger Staples. Mr. Hunt testified that Phillip Smith had been staying with Mr. Staples for about a week prior to the date on which the search warrant was executed. Mr. Hunt testified that it "appeared" that Phillip Smith was selling crack cocaine from Mr. Staples' apartment because there were "different people just coming in and out all the time." Mr. Hunt testified that shortly before the police arrived, he was walking through the apartment complex on his way to his apartment, and he stopped to talk to the Defendant, who was sitting in a chair outside Mr. Staples' apartment. The Defendant might have been eating a hamburger. Mr. Hunt testified that he saw "a [beer] cap look like they was a rock laying in it beside the chair [the Defendant] was sitting in." Mr. Hunt described the rock as looking like crack cocaine, but he also stated that he was not sure that it was crack cocaine because he never touched it or picked it up. Significantly, Mr. Hunt described the cocaine as "a" rock, in the singular. While Mr. Hunt stood outside talking to the Defendant, Mr. Staples called them over, and they went inside his apartment. When the police arrived at Mr. Staples' apartment, Mr. Hunt and the Defendant were walking through the door to enter the apartment. Mr. Hunt was indicted along with the Defendant and Mr. Staples for possession of cocaine in an amount of .5 grams or more with the intent to sell or deliver. Mr. Hunt pled guilty to the offense.

Lieutenant Danny Fay of the Winchester Public Safety Department testified that he assisted in the search of Roger Staples' apartment. Lieutenant Fay entered the apartment first. The front door of the apartment was open. As Lieutenant Fay entered the apartment, the Defendant was standing closest to him, and Mr. Staples was standing beside the Defendant. Mr. Hunt was standing further away, on the other side of the couch. Lieutenant Fay pushed the Defendant and Mr. Staples down "like dominoes." The Defendant was holding a drink in his hand, which spilled as he fell to the ground. Lieutenant Fay directed Mr. Hunt to lie on the ground, and Mr. Hunt did so. Sergeant

Mantooth entered the apartment behind Lieutenant Fay, and he went straight to the bedroom, where Phillip P. M. Smith was. When the other officers arrived, Lieutenant Fay went into the bedroom to assist Sergeant Mantooth. Lieutenant Fay saw Mr. Smith hide something under the covers on the bed and advised Sergeant Mantooth, who seized from under the covers a plastic bag containing several individual bags of crack cocaine.

Mr. Staples testified that he was standing beside the stove when the police entered his apartment. Mr. Staples testified that he did not know that there was any crack cocaine in his apartment. Mr. Staples corroborated Sergeant Mantooth's testimony that Mr. Smith had come into his apartment earlier that day. Mr. Staples testified that Mr. Smith had not been living at his apartment. Mr. Staples was not aware of any drug activity occurring in his apartment. Mr. Staples was standing within ten feet of the bed when the police came into his apartment. Regarding the 12.7 grams of crack cocaine found in the bed where Mr. Smith was lying, Mr. Staples testified, "I don't know he had that much in there." Mr. Staples testified that he invited Mr. Hunt and the Defendant into his apartment because they were friends of his. Mr. Staples testified that the Defendant had been inside his apartment for only a few minutes before the officers arrived. The Defendant did not testify.

## SUFFICIENCY OF THE EVIDENCE

The Defendant argues that the evidence is insufficient to support his conviction. When an accused challenges the sufficiency of the convicting evidence, our standard of review is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). This Court may not reweigh or re-evaluate the evidence. See State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003). State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. See id. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of demonstrating why the evidence is insufficient to support the jury's verdict. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The Defendant was indicted for possession of cocaine in an amount of .5 grams or more with the intent to sell or deliver in violation of Tennessee Code Annotated section 39-17-417. A jury convicted the Defendant of the lesser included offense of facilitation of possession of cocaine in an amount of .5 grams or more with the intent to sell or deliver. See Tenn. Code Ann. § 39-11-403(a); State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999). Facilitation occurs when, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). This statute applies to a person who facilitates the criminal conduct of another by knowingly furnishing substantial assistance, but who lacks the intent

to promote, assist, or benefit from the commission of the felony.  See Tenn. Code Ann. § 39-11-403 Sentencing Commission Comments; State v. Fowler, 23 S.W.3d 285, 287 (Tenn. 2000).  As stated in the trial court's instructions to the jury, the crime of which the Defendant was convicted required the State to prove the following elements:

> (1)  That the Defendant knew that another person intended to commit the specific felony of possession of .5 grams or more of cocaine with the intent to sell or deliver, but did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense;
>
> (2)  That the Defendant furnished substantial assistance to that person in the commission of the felony; and
>
> (3)  That the Defendant furnished such assistance knowingly.

See Tenn. Code Ann. §§ 39-11-403(a); 39-17-417(a)(4); T.P.I.--Crim. 3.02.

Upon our close review of the evidence, we are constrained to hold that the State failed to prove beyond a reasonable doubt any of these three elements.  No drug sales were detected at Mr. Staples' residence during police surveillance.  No drug buys were conducted by undercover officers at Mr. Staples' residence or from Mr. Staples' friend, Phillip Smith.  Mr. Staples' neighbor, Mr. Hunt, testified that it "appeared" that a man named Phillip Smith was selling "dope" at Mr. Staples' apartment "because you seen different people just coming in and out all the time."  This "proof" of drug sales is in fact only speculation on Mr. Hunt's part based on seeing people coming and going from Mr. Staples' apartment.

The only connection between the Defendant and Mr. Staples' residence that the police observed was the Defendant's presence in the apartment during the execution of the search warrant.  Other proof demonstrated that the Defendant was there because he had been summoned by Mr. Staples; however, the only proof about why Mr. Staples called the Defendant was Mr. Staples' testimony that the Defendant was his friend.  While Sgt. Mantooth testified that, of the three men found in the apartment's living room area, the Defendant was in the closest proximity to the drugs, his position had been determined by Lt. Fay putting him on the floor:  the officers did not simply enter the apartment and find the Defendant a few inches from the cocaine.  Upon searching the Defendant, the police found no drugs, money or drug paraphernalia.  The only other evidence connecting the Defendant to the apartment at which cocaine was seized came from Mr. Hunt.  Mr. Hunt testified that, a few minutes before the search, he saw the Defendant sitting outside near Mr. Staples' apartment.  He also saw "a [beer] cap look like they was a rock laying in it beside the chair [the Defendant] was setting in."  Mr. Hunt described the rock as looking like crack cocaine, but he also stated that he was not sure that it was crack cocaine because he never touched it or picked it up.  Again, Mr. Hunt described the substance as "a" rock, in the singular.

-4-

During the search, the police seized a Cobra beer bottle cap in which were laying a cigarette cellophane pack and .59 grams of cocaine. This seized cocaine consisted of four "rocks." These items were laying on the floor near the wall heater. No one saw the Defendant place the items there, and there was no proof that the Defendant ever claimed any interest in the items. There was no proof that the bottle cap found in the apartment was the same one that Mr. Hunt claimed to have seen sitting on the ground near the Defendant outside the apartment.[1] The only proof of any possessory interest in the cocaine came in conjunction with Mr. Hunt's guilty plea to possessing the cocaine. However, at trial, Mr. Hunt testified that he pled guilty as a strategy, not because he was, in fact, guilty of the offense. Indeed, he steadfastly denied at trial that the cocaine was his.

Nowhere in this proof is there any evidence that the Defendant knew that Phillip Smith, Roger Staples, or anyone else, intended to commit the offense of possessing cocaine with the intent to sell or deliver. Nowhere in this proof is there any evidence that the Defendant transported cocaine into the apartment in a knowing effort to assist Phillip Smith, Roger Staples, or anyone else, possess cocaine with the intent to sell or deliver. Rather, these conclusions are based solely on speculation that (1) what Mr. Hunt saw sitting near the Defendant were the same items later found in the apartment (and we note that Mr. Hunt did not testify to seeing a cellophane package in the beer cap that he saw and did not testify to seeing four "rocks," but only one), (2) the Defendant transported these items into the apartment, and (3) the Defendant did so with the requisite mens rea required for the offense of facilitation. Speculation does not satisfy the State's burden of proving the elements of the offense beyond a reasonable doubt.

The State argues that the evidence supports the inference that the Defendant knew that crack cocaine was being sold from Mr. Staples' apartment, and therefore, that someone inside the apartment was in possession of .5 or more grams of cocaine. We disagree. There is no evidence in the record before us as to what the Defendant may have known about the activities in Mr. Staples' apartment. The State also argues that the Defendant substantially assisted Roger Staples in the possession of cocaine by bringing into his apartment the beer bottle top containing crack cocaine. Again, we disagree. Given that no one saw the Defendant bring the cocaine into Mr. Staples' apartment, and given that there are discrepancies in the descriptions of the beer top seen near the Defendant while he sat outside and the one found in the apartment, the proof is simply insufficient to support this inference. Furthermore, the Defendant's proximity to the cocaine found in living room of the apartment was caused by Lieutenant Fay's actions in pushing the Defendant down; not by the Defendant's own freedom of will. In short, the proof in this case does not support the inferences apparently made by the jury. The proof is insufficient to support the Defendant's conviction of facilitation of possession with intent to sell over .5 grams of cocaine, and we therefore reverse the Defendant's conviction and dismiss the charges against him.

The Defendant also argues that the State failed to prove actual or constructive possession. However, as the State correctly observes in its brief, possession is not an element of facilitation of

[1]When questioned on this point, Mr. Hunt stated that the cap found in the apartment looked "similar" to the one he had seen outside near the Defendant, but that one of them "didn't have the plastic around it."

possession of a controlled substance.  Moreover, given our disposition of the Defendant's conviction on other grounds, this issue is moot and we need not further address it.

## SENTENCING

Although we have reversed and dismissed the Defendant's conviction, we will nevertheless address the Defendant's challenge to his sentence in order to facilitate any further appellate review.

When a defendant challenges the length, range, or manner of service of his sentence, our review of the record is de novo with a presumption that the determinations made by the trial court are correct.  See Tenn. Code Ann. § 40-35-401(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). For this presumption to apply, there must be an affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances.  See State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999).  In determining or reviewing a sentence, courts must consider:(1) the evidence received at trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence offered by the parties on the enhancement and mitigating factors; (6) any statement the Defendant wishes to make in the Defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment.  See Tenn. Code Ann. §§ 40-35-103(5), -210(b); State v Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, has given due consideration and proper weight to the factors and sentencing principles, and has made findings of fact adequately supported by the record, this Court may not modify the sentence even if it would have preferred a different result.  See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).  However, if the trial court does not comply with statutory sentencing provisions, our review of the sentence is de novo with no presumption the trial court's determinations were correct.  See State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000).  On appeal, the party challenging the sentence bears the burden of establishing that the sentence is improper.  See Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

Laura Prosser of the Board of Probation and Parole testified that the Defendant has four prior felony convictions in Franklin and Lincoln Counties.  The Defendant received concurrent sentences of three years to be served on probation in two of those cases.  The Defendant's probation was subsequently revoked, and he was sentenced to Community Corrections.  The Defendant's Community Corrections sentence was revoked, and he was ordered to serve his sentences in confinement.  The Defendant was later paroled, and he subsequently violated his parole and was again ordered to serve his sentences in prison.

The presentence report indicates that the Defendant was 55 years old at the time of sentencing.  The Defendant has three prior felony theft convictions, a prior felony conviction for attempted possession of cocaine, and several misdemeanor convictions.  The Defendant admitted that he had been using crack cocaine for fifteen years, and that he was under the influence of crack cocaine at the time the instant offense occurred.  Ms. Prosser testified that the Defendant stated in an interview that he had voluntarily entered a drug rehabilitation program in 1988, and that he left

the program before completing it. The Defendant was employed by Robin Morris Drywall until his arrest in this case.

Sergeant Danny Mantooth also testified at the sentencing hearing. He testified that when he executed the search warrant of Roger Staples' apartment, he was specifically looking for Phillip P. M. Smith, whom he believed to be selling crack cocaine. Sergeant Mantooth did not have any knowledge that the Defendant was inside Mr. Staples' apartment. A confidential informant had never purchased any drugs from the Defendant.

The Defendant's mother, Dorothy Corn, testified that the Defendant had been living with her "off and on" since his separation from his former wife. Ms. Corn testified that the Defendant had been employed for many years. Ms. Corn knew that the Defendant had used drugs and that he had been in a drug rehabilitation program. Ms. Corn testified that she read a letter stating that the Defendant had completed the rehabilitation program.

The Defendant testified that he lived with his mother. The Defendant graduated from high school and served in the military for three years, including service in Vietnam. The Defendant admitted to having used cocaine, and the Defendant testified that his felony convictions were the result of his drug use. The Defendant testified that he completed a drug rehabilitation program.

At the conclusion of the sentencing hearing, the trial court sentenced the Defendant as a Range II multiple offender to serve nine years in confinement. The Defendant was convicted of facilitation of possession of cocaine in an amount of .5 grams or more with the intent to sell or deliver, a Class C felony. See Tenn. Code Ann. § 39-17-417; Tenn. Code Ann. § 39-11-403(b). The range of sentencing for a Range II offender of a Class C felony is not less than six years and not more than ten years. See id. § 40-35-112(b)(3).

The presumptive sentence for a Class C felony shall be the minimum sentence within the range if no enhancement or mitigating factors exist. See id. § 40-35-210(c). Where one or more enhancement factors apply, but no mitigating factors exist, the trial court may enhance the sentence above the presumptive sentence, but still within the range. See id. § 40-35-210(d). Should both enhancement and mitigating factors exist, the trial court must start at the minimum sentence and enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors. See id. § 40-35-210(e).

The trial court applied two enhancement factors under Tennessee Code Annotated section 40-35-114. The trial court applied enhancement factor (2), that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. The trial court noted that the Defendant admitted to having used crack cocaine. The record also reflects that the Defendant had several misdemeanor convictions and four prior felony convictions. The trial court also applied enhancement factor (9), that the Defendant has a previous history of unwillingness to comply with the conditions of release in the community. The trial court stated, "[The Defendant has] failed on all forms of release. He failed on state probation,

he failed on Community Corrections, and he failed on parole, so certainly that factor applies." The trial court put "considerable weight" on enhancement factor (2) and "maximum weight" on enhancement factor (9).

The Defendant argues that the trial court erred by not articulating its reasons for not applying any mitigating factors. In determining the Defendant's sentence, the trial court did not discuss any mitigating factors. In order to allow meaningful appellate review,

> [T]he trial court "must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence."

State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997) (quoting State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994)).

At the sentencing hearing, the Defendant argued that his sentence should have been mitigated because a verdict of guilt of facilitation of the charged offense indicated that the jury believed that the Defendant "played a minor role" in the commission of the offense. However, the Defendant's conviction of the lesser felony of facilitation rather than the crime for which he was indicted reflects the jury's determination of the seriousness of his role, and he is entitled to no further mitigation on this ground. The Defendant also urged the trial court to apply mitigating factor (1), that the Defendant's criminal conduct neither caused nor threatened serious bodily injury. *See* Tenn. Code Ann. § 40-35-113(1). This Court has previously held that this factor should not be applied when the defendant is convicted of an offense involving cocaine. See State v. Vanderford, 980 S.W.2d 390, 407 (Tenn. Crim. App. 1997) and cases cited therein. Our Supreme Court has subsequently rejected a per se exclusion of this mitigating factor in cocaine possession cases, leaving the determination to be made on a case by case basis. See State v. Ross, 49 S.W.3d 833, 848-49 (Tenn. 2001). Even reviewing the Defendant's sentence de novo, we find that the Defendant's nine-year sentence is not excessive. The Defendant is not entitled to relief on this issue.

The Defendant also takes issue with the manner in which his prior felonies were counted with respect to determining his status as a Range II multiple offender. "A 'multiple offender' is a defendant who has received . . . a minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable." Tenn. Code Ann. § 40-35-106(a)(1). In this case, the Defendant was convicted of a Class C felony. The Defendant has four prior Class D felony convictions: one count of attempted possession of less than one-half gram of cocaine and three counts of theft between $1,000 and $10,000. The Defendant contends that two of these prior felonies should be counted as only one because they were committed as part of a single course of conduct within twenty-four hours. See id. § 40-35-106(b)(4). Even if the Defendant is correct, however, he is entitled to no relief. Accepting the Defendant's argument at face value still leaves him with three prior felonies

within the next lower class of the instant felony. Accordingly, there was no error in sentencing the Defendant within Range II. This issue has no merit.

## CONCLUSION

The judgment of the trial court is reversed and the charges against the Defendant are dismissed.

_____
DAVID H. WELLES, JUDGE