IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 27, 2005

### STATE OF TENNESSEE v. DANE LEE DUCKETT

**Direct Appeal from the Criminal Court for Cumberland County**
**No. 7479     Lillie Ann Sells, Judge**

_____

**No. E2004-02321-CCA-R3-CD - Filed October 26, 2005**

_____

A Cumberland County Criminal Court jury convicted the appellant, Dane Lee Duckett, of attempting to manufacture methamphetamine, simple possession of marijuana, possession of drug paraphernalia, and driving on a suspended license, and the trial court sentenced him to an effective sentence of six years in confinement. On appeal, the appellant claims that the evidence is insufficient to support the convictions and that his sentence is excessive. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH, and ALAN E. GLENN, JJ., joined.

G. Earl Patton, Crossville, Tennessee, for the appellant, Dane Lee Duckett.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; William Edward Gibson, District Attorney General; and Gary McKenzie and Kevin D. Poore, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

Deputy Richard Tinch of the Cumberland County Sheriff's Department testified that on February 28, 2003, he was on patrol and pulled into the Lantana Market in order to buy a soft drink. As he pulled into the parking lot, Deputy Tinch noticed a blue Oldsmobile parked at a gas pump and saw the appellant getting out of the driver's seat. The appellant shut the car door and began pumping gas, and Deputy Tinch went into the store. As Deputy Tinch came out, the appellant passed him. Deputy Tinch recognized the appellant and believed that the appellant's driver's license had been suspended. While the appellant was in the store, Deputy Tinch ran a computer check on the Oldsmobile's license plate and learned that the plate was not registered to the car. When the

appellant came out of the store, Deputy Tinch confronted him about the car and his driver's license. The appellant told the deputy that his license had been suspended but that he recently had sent money to the State of Tennessee in order to have the license reinstated. Deputy Tinch ran a computer check on the appellant's license, learned that it had been suspended, and arrested the appellant for driving on a suspended license. Deputy Tinch learned that the license tag on the car was registered to Frances Morrison, the appellant's mother.

Deputy Tinch approached the Oldsmobile and saw Mark Hamby sitting in the front passenger seat and Tiffany Marshall sitting in the back seat. A black leather jacket was in the driver's seat. Deputy Tinch searched the jacket pockets and found a syringe and a partially-smoked marijuana cigarette. Deputy Tinch searched the car and found a jar containing a white liquid underneath the passenger seat. The liquid was field-tested, and it tested positive for ephedrine. Deputy Tinch said that the keys were in the car's ignition and that a roach clip and a brass-colored spoon with some residue on it were attached to the keychain. Deputy Tinch called for a supervisor, and Lieutenant Gary Cox came to the scene. Lieutenant Cox then called Lieutenant David Gibson to the Lantana Market. When Lieutenant Gibson arrived, the officers opened the car's trunk and found boxes of matchbooks, iodine, packets of pseudoephedrine, a large bottle of lighter fluid, plastic tubing, carburetor cleaner, coffee filters, leather work gloves stained dark red, and a Pyrex baking dish. The officers also found a second jar containing a liquid.

On cross-examination, Deputy Tinch testified that he never saw the appellant driving the Oldsmobile, that there was no indication the jacket belonged to the appellant, and that he found no drug paraphernalia on the appellant's person. He stated that he did not remember the appellant's telling him that the appellant was not driving the car and that it was possible Hamby or Marshall had been driving. He stated that the police did not dust the car or the items found in it for fingerprints and that he charged everyone in the car with attempting to manufacture methamphetamine.

Lieutenant David Gibson of the Cumberland County Sheriff's Department testified that he was trained in detecting and dealing with methamphetamine laboratories and was certified to handle methamphetamine labs. On February 28, 2003, he was dispatched to the Lantana Market. He stated that only someone certified in methamphetamine laboratories could handle the items found in the car trunk because the materials used to manufacture methamphetamine could cause an explosion. He stated that the most common method used to make methamphetamine in that area of Tennessee was the red phosphorus method, which required ephedrine, iodine, and phosphorus. He stated that the ephedrine could be obtained from Sudafed tablets and that the phosphorus could be obtained by taking the striker plates off matchbook covers and soaking them in acetone. He stated that people often wore gloves to make methamphetamine and that iodine would stain the gloves reddish-brown. He said that he field-tested the liquid found in the car's trunk and that it tested positive for methamphetamine oil. Lieutenant Gibson transported the items found in the Oldsmobile to the Tennessee Bureau of Investigation's (TBI) Crime Laboratory. On cross-examination, Lieutenant Gibson testified that the striker plates found in the Oldsmobile had not been removed from the matchbook covers, that he did not find any acetone or hydrogen peroxide in the car, and that he never saw the appellant driving the Oldsmobile.

Robert Mark Young, a forensic scientist with the TBI Crime Laboratory testified that he received two liquids, a powder substance, and a hand-rolled cigarette butt for testing. He stated that one of the liquids tested positive for methamphetamine and that the other tested positive for pseudoephedrine. The powder also tested positive for pseudoephedrine. He tested the cigarette and discovered that it contained marijuana.

Frances Louise Morrison testified for the appellant that she was his mother and that she had never owned a blue Oldsmobile. She stated that she did not know why her license plate was on the car. The jury convicted the appellant of attempting to manufacture methamphetamine, a Class D felony; simple possession of marijuana, a Class A misdemeanor; possession of drug paraphernalia, a Class A misdemeanor; and driving on a suspended license, a Class B misdemeanor. The trial court sentenced him to concurrent sentences of six years; eleven months, twenty-nine days; eleven months, twenty-nine days; and six months, respectively.

## II. Analysis

### A. Sufficiency of the Evidence

The appellant claims that the evidence is insufficient to support the convictions for attempting to manufacture methamphetamine, simple possession of marijuana, and possession of drug paraphernalia because the evidence fails to show that he possessed any of the items found in the car. The State claims that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Moreover, we note that a guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In order to sustain the appellant's felony conviction, the State was required to prove that the appellant knowingly attempted to manufacture methamphetamine. See Tenn. Code Ann. § 39-14-417(a)(1). As to the misdemeanor convictions, the State needed to prove that the appellant knowingly possessed marijuana. See Tenn. Code Ann. § 39-17-418(a). The State also had to prove

that the appellant possessed drug paraphernalia, which is defined in part as something used to "process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, [or] inhale" a controlled substance. See Tenn. Code Ann. § 39-17-425(a)(1).

In drug cases, possession of an object can be either actual or constructive. See State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996). To establish constructive possession, it must be shown that the person accused had the power and intention at a given time to exercise dominion and control over the object directly or through others. See State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). In other words, "'constructive possession is the ability to reduce an object to actual possession.'" Id. (quoting State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). "The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs." Id.

In the instant case, the evidence shows that the appellant was in control of the car where the marijuana, paraphernalia, and items used to make methamphetamine were discovered. Deputy Tinch testified that when he arrived at the Lantana Market, the appellant was getting out of the driver's seat. The appellant shut the car door and began pumping gas. After Deputy Tinch arrested the appellant for driving on a suspended license, he approached the car and saw Mark Hamby sitting in the front passenger seat and Tiffany Marshall sitting in the back seat. Deputy Tinch also observed a black leather jacket in the driver's seat. Upon checking the car's license tag, Deputy Tinch learned that the tag was registered to the appellant's mother. However, she denied owning the car and testified that she did not know how her license tag got on the vehicle. We conclude that a reasonable juror could have found that the foregoing facts demonstrated the appellant's knowing possession of the marijuana, drug paraphernalia, and items used to manufacture methamphetamine.

### B. Excessive Sentence

Next, the appellant claims that his sentence is excessive. Specifically, he argues that the trial court misapplied enhancement factors in light of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and failed to apply a mitigating factor. The State claims that the trial court properly sentenced the appellant. We agree with the State.

At the sentencing hearing, Mark Ledbetter from the Tennessee Board of Probation and Parole testified that he helped prepare the appellant's presentence report. The appellant has prior felony convictions for possession of a Schedule VI drug, theft of property over five hundred dollars, possession of marijuana with the intent to distribute, and possession of a prohibited weapon. The appellant also has misdemeanor convictions for public intoxication, assault, driving while impaired, and driving on a suspended, cancelled, or revoked license. The appellant has also violated probation and was charged with new drug-related offenses while he was on bail in the instant case. Mr. Ledbetter stated that the appellant claimed to have liver cancer and hepatitis C but that he had been unable to corroborate that information. Regarding employment history, the appellant worked for Davis Stone for four years.

The appellant acknowledged that he had violated probation sentences in the past and that he had prior convictions. He stated that he had worked for Davis Stone for twelve years and that he had hepatitis C. He stated that he began experimenting with drugs in his late twenties or early thirties and that he never received treatment for his drug problem. He said that his mother had arthritis in her spine and that he cooked, cleaned, and did chores for her. He said that he had been in jail for two months for the crimes in question, that his head was clear, and that he currently was not using drugs. He said that he was willing to attend Narcotics Anonymous meetings, that he was committed to staying off drugs, and that he wanted to be a productive citizen. On cross-examination, the appellant stated that he did not have health insurance. He acknowledged that he could receive help for his drug and health problems in prison but said that he wanted to participate in a drug program that did not involve incarceration. He acknowledged committing other offenses while on bail in the instant case.

Billy Wayne Trogdon, the appellant's uncle, testified that his sister was the appellant's mother. He stated that his sister had a degenerative disc in her back, that someone needed to live with her, and that the appellant had been helping her. He stated that the appellant had worked for him in the past and that the appellant was a reliable employee.

Frances Louise Morrison, the appellant's mother, testified that the appellant had lived with her since 1990. She stated that she had a lot of health problems and had a pinched nerve in her back. She said that the appellant did most of the housework and fixed meals and brought them to her. She said that the appellant had been sick with hepatitis C and that she had been unaware of his prior drug use. She stated that the appellant worked for Davis Stone as a rock layer for about twelve years, that he was a good man, and that he could live with her if the trial court sentenced him to probation.

The State introduced the appellant's presentence report into evidence. According to the report, the then forty-one-year-old appellant was divorced with a young son who lived in Oklahoma. In the report, the appellant stated that he quit high school in the eleventh grade but obtained his GED. The appellant also stated that he was in poor physical health, having liver cancer, hepatitis C, and shoulder problems. He stated that he had used marijuana, cocaine, and methamphetamine in the past and that he had never been treated for mental health or substance abuse problems. The report confirms the appellant's prior convictions and shows that his probation previously has been revoked. According to the report, the appellant began working for Davis Stone as a mason in March 1997, but he resigned in December 2000. The appellant also reported that he worked for his uncle's music band for eight months and that he ran a music club called "Ducks" in Oklahoma for one year.

The trial court applied enhancement factors (2), that the appellant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," and (9), that the appellant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," and gave great weight to both factors. See Tenn. Code Ann. 40-35-114(2), (9). Although the appellant had argued that mitigating factor (1), that the appellant's "criminal conduct neither caused nor threatened serious bodily injury," applied to his sentences, the trial court refused to apply that factor. The trial court sentenced the

appellant to concurrent sentences of six years for the attempting to manufacture methamphetamine conviction; eleven months, twenty-nine days for the simple possession conviction; eleven months, twenty-nine days for the possession of drug paraphernalia conviction; and six months for the driving on a suspended license conviction.

Appellate review of the length, range, or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentences. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

The appellant was convicted of a Class D felony. At the time he committed the offenses in question, the trial court was to begin at the presumptive minimum, then "enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e). The presumptive sentence for a Class D felony is the minimum sentence within the appropriate range. See Tenn. Code Ann. § 40-35-210(c). The appellant was sentenced as a Range II, multiple offender. Accordingly, the presumptive sentence was four years. See Tenn. Code Ann. § 40-35-112(b)(4). The trial court applied two enhancement factors to the appellant's sentences, gave both of the factors great weight, and enhanced the appellant's felony sentence to six years. In light of the Blakely decision, the appellant claims the trial court improperly applied enhancement factors to his felony sentence.

In Blakely, the Supreme Court held that

> the "statutory maximum" for Apprendi [v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348,(2000),] purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

Blakely, 542 U.S. at ___, 124 S. Ct. at 2537. Blakely did not dispute the appropriateness of a trial court's application of enhancement factor (2), which is based on the existence of a defendant's prior criminal history, but called into question the constitutionality of the application of the remainder of our statutory enhancement factors without such facts being found by a jury or admitted by an appellant.

However, our supreme court recently held that Blakely does not announce a new rule of law and that the "Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violates the Sixth Amendment right to jury trial." State v. Gomez, 163 S.W.3d 632, 651 n.16 (Tenn. 2005). Given the dictates of Gomez, the appellant's reliance on Blakely must fail. In any event, the appellant admitted during the sentencing hearing that he had prior convictions and that he had previously violated probation. Therefore, the trial court properly enhanced the appellant's sentences based upon these admissions.

The appellant also claims that the trial court erred by refusing to apply mitigating factor (1), that the appellant's criminal conduct neither caused nor threatened serious bodily injury, to his felony sentence. The trial court refused to apply this factor based upon State v. Vanderford, 980 S.W.2d 390 (Tenn. Crim. App. 1997). In that case, this court stated that factor (1) should not be applied when a defendant is convicted of a crime involving cocaine. Id. at 407. However, our supreme court subsequently rejected a per se exclusion of this mitigating factor in cocaine possession cases. See State v. Ross, 49 S.W.3d 833, 848-49 (Tenn. 2001). The State claims that the trial court properly refused to apply factor (1) because methamphetamine laboratories are extremely dangerous and can cause serious bodily injury. However, while Lieutenant Gibson testified that the materials used to make methamphetamine can cause an explosion, there was no specific testimony as to the level of dangerousness involved with the items in this particular case. In any event, even if the trial court improperly refused to apply mitigating factor (1), the proper application of the two enhancement factors and the great weight given to them supports the appellant's six-year sentence for attempting to manufacture methamphetamine.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

                                                 _____
NORMA McGEE OGLE, JUDGE