# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 5, 2013 Session

## STATE OF TENNESSEE v. ROBERT JOSEPH HARR

**Appeal from the Circuit Court for Carroll County**
**No. 10CR159      Donald E. Parish, Judge**

---

**No. W2011-02735-CCA-R3-CD - Filed September 27, 2013**

---

A Carroll County jury convicted appellant, Robert Joseph Harr, of attempted sexual battery. The trial court sentenced him to eleven months, twenty-nine days in the county jail and ordered him to serve forty-five days in confinement with the balance of his sentence to be served on probation. On appeal, appellant challenges the sufficiency of the evidence to sustain his conviction, the trial court's denial of full probation, the trial court's discovery rulings under Tennessee Rule of Criminal Procedure 16, and the State's denial of his application for pretrial diversion. Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. JOSEPH M. TIPTON, P.J., filed a separate concurring and dissenting opinion.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the appellant, Robert Joseph Harr.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Hansel Jay McCadams, District Attorney General; and R. Adam Jowers, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History and Facts

This case concerns allegations by the victim, B.L.,[1] that appellant touched or tried to touch his genital area on May 31, 2010. The Carroll County grand jury indicted appellant

---

[1] It is the policy of this court to protect the identity of victims of sex crimes.

for sexual battery, and the trial court held a jury trial on August 17 and 18, 2011.

At trial, Carroll County Sheriff's Deputy Tommy Decanter testified that he was dispatched to Ephesus Church Road on May 31, 2010, because a male had advised the 9-1-1 operator that he had been sexually assaulted and was being followed by the person who assaulted him. Deputy Decanter found B.L. walking down Ephesus Church Road toward Highway 77. He stopped and asked B.L. if he was the person who had called 9-1-1, and B.L. responded affirmatively. B.L. was on his cellular telephone with the 9-1-1 operator at the time. Deputy Decanter testified that B.L. told him that appellant "had sexually assaulted him, tried to touch his private parts." He further testified that B.L. appeared to be upset.

Deputy Mike Taylor arrived shortly after Deputy Decanter. The deputies testified that they observed a white Nissan Pathfinder driving towards them, and B.L. informed them that appellant was driving the vehicle. The Pathfinder stopped in a driveway, and Deputy Taylor left to intercept appellant. Deputy Taylor used his patrol car to prevent appellant from driving away.

Deputy Decanter stayed with B.L. He asked B.L. to make a written statement, but B.L. replied that he could not read or write very well. Instead, B.L. gave Deputy Decanter an oral statement that the deputy reduced to writing. B.L.'s family members came to the location to pick him up. They advised Deputy Decanter that B.L. had called them to tell them that appellant had touched his private parts and that he had run away and needed a ride. B.L. then left with his family.

Deputy Decanter met Deputy Taylor where he had stopped appellant. Both deputies and appellant went to appellant's trailer. Deputy Decanter explained that appellant had a trailer on his land where he let people stay rent-free, which was where the encounter with B.L. occurred. Deputy Decanter told appellant about the accusations against him. Appellant signed a waiver of rights form and gave a statement to Deputy Decanter. Appellant said that he had known B.L. for approximately three weeks and had helped him obtain a job in Martin, Tennessee. On the day in question, he asked B.L. to help him work on the washing machine at his trailer. He drove to Paris to pick up B.L. and bring him back. They started working on the machine. B.L. told appellant that he did not like "gays," and appellant "told him to leave." Appellant denied trying to have sex with B.L. or "touch[ing] him in anyway [sic]." Deputy Decanter testified that he did not go into the trailer because he did not believe there would be any evidence of a struggle based on what B.L. told him and his observation of B.L.'s appearance. He transported appellant to the jail, where appellant gave a handwritten statement. In his second statement, appellant added that he met B.L. through B.L.'s probation officer.

On cross-examination, Deputy Decanter affirmed that he did not see any injuries or signs of a struggle on B.L. or appellant. He agreed that he had previously testified that B.L. had informed him that appellant "walked up behind him, rubbed him down, undone [sic] his pants[,] . . . turned him around[,] and pulled out his private parts."

B.L.'s mother, L.K., testified that B.L. had difficulty keeping a job and was disabled due to hearing loss, a learning disability, and psychological issues. He graduated from high school with a special education diploma. She testified that B.L. had been on probation for a criminal trespassing conviction during the year prior to the trial. B.L.'s probation officer recommended that he ask appellant to help him find a job. Appellant helped B.L. find a job and helped arrange transportation for him because he did not have a license. Appellant also helped B.L.'s sister find a job. L.K. recalled getting a text message from B.L. on May 31, 2010, that read, "[C]ome and get me now." B.L. also called their house and spoke with his sister. L.K. talked to him, also, and he told her where he was located. L.K. and her husband drove twenty minutes to B.L.'s location. She described B.L. as being "really nervous." According to L.K., B.L. had difficulty articulating what happened, so Deputy Decanter "filled [them] in on what was going on." L.K. testified that since the incident, B.L. had become "a little bit more hateful, a little bit [more] short-tempered than normal," and he had difficulty sleeping.

Michelle Taylor testified that she had been B.L.'s probation officer. He was convicted of aggravated criminal trespassing, a misdemeanor offense, and placed on probation in June 2009. B.L.'s father warned her that B.L. would have difficulty paying his fines, and she said that proved to be the case. Ms. Taylor referred B.L. to appellant because appellant was interested in helping young men between eighteen and twenty-four years old obtain jobs. Appellant had previously found employment for some of Ms. Taylor's probationers. She stopped referring people to appellant after learning about B.L.'s allegations. Ms. Taylor testified that B.L. was able to pay his fines after obtaining a job, and he successfully completed probation. On cross-examination, Ms. Taylor testified that appellant told her that he wanted to help probationers because his son had been incarcerated at one time and could not find a job after he was released.

B.L. testified that he was convicted of trespassing because he had left his keys in a neighbor's apartment and broke into the apartment to retrieve them. He said that he called appellant because he was having trouble finding work. Appellant drove B.L. and several others to Hamilton Ryker, where they filled out job applications. Through Hamilton Ryker, B.L. obtained a job at "MTD." Appellant called B.L. to ask how the job was going and then called again a few days later to ask B.L. to help him work on his washer and dryer. B.L. agreed to help him, and appellant picked him up the next day to go to appellant's trailer. At the trailer, B.L. waited in the living room while appellant looked for the belt to go on the

washing machine. Appellant told B.L. "to go in the back bedroom to lay [sic] down and relax." B.L. told him that he did not "want to go back there." B.L. testified that appellant pulled B.L.'s pants down once, then he shut the front door. B.L. pulled his pants up,[2] but appellant pulled his pants down again, and he touched B.L.'s penis. B.L. told appellant, "[N]o," and he pushed appellant's hand away from him. B.L. testified that he had to pull his pants up as he opened the front door to leave.

B.L. said that as he was walking away from the trailer, he called his parents' house and spoke with his sister. B.L. said that he was scared when he talked to her and just asked her to come and pick him up. He called 9-1-1 immediately after speaking with his sister, and he stayed on the line with the operator. The State introduced a recording of B.L.'s 9-1-1 call into evidence. During the call, B.L. told the operator that appellant had pulled down his pants and "tried to play with [his] s**t." B.L. testified that appellant followed him in his white Nissan Pathfinder. Appellant asked him to get into the vehicle and offered to take him home "because [he felt] bad for what [he] did." Eventually, law enforcement officers arrived. B.L. said that he pointed out appellant's vehicle to the officers. Appellant had parked in a driveway farther down the road. B.L. stated that he left the scene with his parents after they arrived. He did not seek medical attention afterwards, but he said that he experienced loss of sleep and depression.

On cross-examination, B.L. testified that he might have told Deputy Decanter that appellant tried to put his private parts in his mouth, but he "was not thinking then." B.L. said that appellant was kneeling when B.L. pushed his hand away and left the trailer.

Appellant testified on his own behalf. He said that he helped B.L. find a job at MTD. Appellant knew that B.L. was knowledgeable about car mechanics, so he called B.L. in late May 2010 to ask B.L. to help him with his car and a washing machine. He offered to pay B.L. $20. On May 31, 2010, he drove to Paris to pick up B.L., and they returned to appellant's trailer. Appellant said that during the drive, B.L. played with his cellular telephone and asked personal questions about some of the people with whom appellant had worked. When they arrived at the trailer, B.L. continued playing with his telephone and asking personal questions. He would not help appellant. Appellant said that he "lost [his] cool" and told B.L. "to get out." He also said that he was going to take B.L. home and tell his step-father that B.L. was lazy. Appellant testified that B.L. "was mad." B.L. left, and appellant followed him in his vehicle. He offered to give B.L. a ride, but B.L. declined. Appellant said that he returned to the trailer to lock it, and when he drove back down the road to find B.L., B.L. was standing next to a car.

---

[2] B.L.'s testimony during direct examination appeared to be that appellant was the person who pulled his pants up, but during cross-examination, B.L. clarified that he pulled his pants up himself.

Appellant also testified about his background and health. He was in the Air Force and served in Vietnam. He worked for Standard Oil/Chevron and for Consolidated Aluminum. He became interested in helping people find jobs when his son could not find a job after being incarcerated. Appellant had fostered thirty to forty children. He also worked at a homeless shelter. At the time of trial, appellant was suffering from "white cancer" and Level IV kidney failure.

At appellant's September 12, 2011 sentencing hearing, the trial court stated that it had considered the contents of the presentence report, appellant's physical and mental health, his social history, the facts and circumstances of the offense, appellant's criminal history, and his previous actions and character. The court noted that appellant's physical health was poor and that his social history was good. As for the facts and circumstances of the offense, the trial court acknowledged that B.L. had "borderline impairments" but "was alert and well[-]oriented" at trial. Appellant did not have any criminal history, and "[t]he previous actions and character of [appellant] [had] been good based upon all information available." The trial court gave little weight to the enhancement factor that the offense "was committed to gratify the defendant's desire for pleasure or excitement." *See* Tenn. Code Ann. § 40-35-114(7) (Supp. 2012). As a mitigating factor, the trial court considered that appellant's "criminal conduct neither caused nor threatened serious bodily injury" but determined that the factor was "essentially cancel[led] . . . out" by the fact that he was "not charged with having caused serious bodily injury." Regarding alternative sentencing, the trial court determined that appellant had "a good potential for rehabilitation" but further determined that "there is some need for the protection of the interests of society for future criminal conduct." The trial court stated that a sentence including "some confinement" would "provide an effective deterrent to others," while full probation would "depreciate the seriousness of the offense." The trial court sentenced appellant to eleven months, twenty-nine days in the county jail and ordered him to serve forty-five days in confinement with the balance of his sentence to be served on probation.

## II. Analysis

### A. Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence supporting his conviction for attempted sexual battery by arguing that the only evidence presented was evidence of a completed crime.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To prove that appellant committed attempted sexual battery as a lesser-included offense of the charge of sexual battery, the State had to show that appellant attempted to have unlawful sexual contact with the victim when the victim did not consent and that appellant knew or had reason to know that the victim did not consent to the sexual contact. *See* Tenn. Code Ann. § 39-13-505(a)(2) (2010). Tennessee Code Annotated section 39-13-501(6) defines "sexual contact":

> "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]

The term "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" Tenn. Code. Ann. § 39-13-501(2) (2010).

In this case, B.L. testified that appellant touched his penis, and B.L. told him "no," pushed his hand away, and left the trailer. While B.L.'s testimony indicated a completed crime, the 9-1-1 recording evinced that B.L. told the operator almost immediately after the incident that appellant "tried to play" with him, and Deputy Decanter testified that B.L. told him that appellant "tried to touch" him. As always, it is the province of the jury to resolve any disputes in the facts and any credibility issues. Here, the jury resolved the conflicts in favor of the State, and the record supports its verdict.

Appellant's analogy to *State v. Kevin Fritz Edwards,* No. E2010-01731-CCA-R3-CD, 2012 WL 1799025, at *1 (Tenn. Crim. App. May 18, 2012), is inapposite. In that case, this court ruled that the evidence did not support the defendant's attempted aggravated sexual battery conviction and that the trial court should not have charged the jury on the lesser-included offense because there was no evidence in the record that the defendant tried and failed to complete his course of action. *Id.* In the instant case, there is testimony that appellant "tried" to touch B.L. Therefore, appellant's argument based on *Edwards* is without merit.

## B. Sentencing

Appellant contends that the trial court erred by imposing a sentence involving confinement. The State responds that appellant waived the argument by failing to cite to any legal authority. *See* Tenn. R. Crim. App. 10(b). Appellant argued in his brief with respect to alternative sentencing that, "the Court denied full probation and imposed jail solely upon public opinion." He also summarily stated that, "the Court failed to properly credit Defendant's mitigating factors." After considering the parties' contentions, we have elected to address the merits.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides that the trial court shall impose a specific sentence consistent with the purposes and principles of the sentencing statutes. *See State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). While a separate sentencing hearing is not mandatory for misdemeanor sentencing, the trial court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). The trial court must sentence the misdemeanor offender to a determinate number of hours, days, or months, and fix a percentage of that sentence for the offender to serve, after which the offender becomes eligible for rehabilitative programs. Tenn. Code Ann. § 40-35-302(d). In determining the percentage of the sentence, the trial court must consider enhancement and

mitigating factors as well as the legislative purposes and principles related to sentencing. *Id*. The misdemeanor sentencing statute grants the trial court the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). While the Tennessee Supreme Court has not addressed whether the *Bise* and *Caudle* standard of review apply to misdemeanor sentencing, this court has applied the abuse of discretion with a presumption of reasonableness standard of review in misdemeanor sentencing cases. *See, e.g., State v. Michael Glen Walsh*, No. E2012-00805-CCA-R3-CD, 2013 WL 1636661, at *4 (Tenn. Crim. App. Apr. 17, 2013), *no perm. app. filed*; *State v. Sue Ann Christopher*, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *7 (Tenn. Crim. App. Mar. 14, 2013), *perm. app. denied* (Tenn. June 18, 2013). Therefore, we will apply that standard of review in this case. We note that the supreme court has previously held that the sentencing court is entitled to considerable latitude in misdemeanor sentencing. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1998) (citing *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn.1998)).

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b) (2010). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2010). In determining whether to grant or deny probation,

a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A trial court should base its decision regarding any sentence involving confinement on the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2010). Furthermore, the trial court should examine the defendant's potential for rehabilitation or lack thereof when determining whether an alternative sentence is appropriate. *Id.* § 40-35-103(5).

The trial court properly denied full probation in this case. The trial court determined that a sentence involving confinement was appropriate to avoid depreciating the seriousness of the offense and as a deterrent to others. *See* Tenn. Code Ann. § 40-35-103(1)(B) (2010). Appellant complains that the trial court did not consider his medical history as a mitigating factor; however, the trial court clearly took appellant's poor physical health into consideration during sentencing despite not articulating that as a mitigating factor. "[T]he record demonstrates that the sentence is . . . in compliance with the purposes and principles listed by statute." *Bise,* 380 S.W.3d at 709-10. The trial court carefully followed the proper procedure when imposing appellant's sentence. Appellant received only forty-five days to serve for a sexual offense in which he was convicted of attempting to touch another person's intimate parts. Thus, we will not disturb appellant's sentences. Appellant is not entitled to relief.

C.  Discovery

Appellant argues that the trial court erred by excluding his proffered evidence, specifically photographs of the interior of his trailer. The State responds that the trial court did not abuse its discretion in fashioning a remedy for appellant's failure to comply with Tennessee Rule of Criminal Procedure 16(b).

Tennessee Rule of Criminal Procedure 16(a) provides the procedure for the State to disclose evidence to a defendant upon the defendant's request. Rule 16(b), the reciprocal discovery rule, provides the procedure for a defendant to disclose evidence to the State:

> If a defendant requests disclosure under subdivision (a)(1)(F) or (G) of this rule and the state complies, then the defendant shall permit the state, on request, to inspect and copy or photograph books, papers, documents, photographs, tangible objects, or copies or portions of these items if:
>
> > (i) the item is within the defendant's possession, custody, or control; and
> >
> > (ii) the defendant intends to introduce the item as evidence in the defendant's case-in-chief at trial.

Tenn. R. Crim. P. 16. Rule 16(d) states that in the event a party fails to comply with Rule 16, a trial court may

> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms or conditions;
>
> (B) grant a continuance;
>
> (C) prohibit the party from introducing the undisclosed evidence; or
>
> (D) enter such other order as it deems just under the circumstances.

"A trial court has wide discretion in fashioning a remedy for non-compliance with a discovery order, and the sanction should fit the circumstances of the case." *State v. Downey*, 259 S.W.3d 723, 737 (Tenn. 2008).

In this case, the State failed to disclose certain evidence prior to trial. Upon appellant's objection, the trial court excluded the evidence. When appellant attempted to introduce photographs of the trailer's interior, the State objected, and the trial court excluded them. The record reveals that the State had requested to see the photographs prior to appellant's testimony during the trial, but appellant's counsel refused to let the State see them. Subsequently, appellant verbally described the interior rather than using photographs.

On appeal, appellant argues that he was not required to disclose the photographs because the State had not completed its discovery. Under Rule 16, both parties have a

continuing duty to disclose evidence; therefore, appellant's obligation to reciprocate discovery began after the State's initial disclosure in response to his discovery request. We conclude that appellant's argument that reciprocal discovery had not been triggered is without merit. Appellant also argues that the photographs were rebuttal evidence not subject to disclosure. However, he attempted to introduce the photographs during his case-in-chief. Hence, they are not rebuttal evidence. The trial court did not abuse its discretion. Appellant is not entitled to relief as to this issue.

### D. State's Denial of Application for Pretrial Diversion

Appellant's final issue is his contention that the State erred by denying his application for pretrial diversion. The record reveals that appellant petitioned the trial court for a writ of certiorari for the court to review the State's decision in denying pretrial diversion, but appellant withdrew the petition as part of a plea bargain involving a charge in another county. Thus, the trial court never reviewed the State's decision, and there is nothing in the record to allow this court to review that decision now. As this court has previously stated,

> It is elementary that an appellate court may only review what is contained in the record - not what might have been or should have been included in the record. The allegations contained in an application for pretrial diversion are not evidence and cannot replace the necessity of a hearing and the memorializing of the hearing by a transcript of the hearing.

*State v. Vanderford*, 980 S.W.2d 390, 406 (Tenn. Crim. App. 1997) (internal citations omitted). Therefore, this issue is without merit.

## CONCLUSION

Based upon our review of the record, the parties' arguments, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE

-11-